PER CURIAM.
L.R., a sixteen-year-old public high school student, appeals her adjudication of delinquency based on a finding that she battered a law enforcement officer in violation of sections 784.07 and 784.03, Florida Statutes (2003). She also contends that the trial court erred in committing her to a residential facility despite the recommendation of the Department of Juvenile Justice (DJJ) that adjudication be withheld and that she be put on indefinite probation. We affirm the adjudication of delinquency but reverse the commitment, concluding that the trial court’s reasons for disregarding the DJJ’s recommendation are insufficient.
The charge of battery on a law enforcement officer was based on events surrounding an altercation at L.R.’s high school during the school day. While classes were in session, L.R. was part of a loud disturbance in the hallway of the school that the school resource officer, a uniformed policeman, was attempting to quell. When the officer tried to calm her and lead her away to his office for further investigation, she claimed he was harassing her, cursed at him, and kicked and hit him in the chest. L.R. contends that this charge should have been dismissed upon her motion because the State failed to present a prima facie case that the officer was in the lawful execution of his legal duty when he tried to lead her away, which caused her to resist.
*829 L.R. correctly contends that an element of the offense for which she was charged is that the officer be in the lawful execution of a legal duty. See Tillman v. State, 934 So.2d 1263, 1270 (Fla.2006) (noting that “because the Legislature has placed the element of lawful execution of a legal duty in both sections 784.07(2) and 843.01, proof that the officer was acting lawfully is necessary in a prosecution for crimes committed under either statute that occur outside an arrest scenario”). The facts adduced at the adjudicatory hearing provided substantial, competent evidence that the school resource officer was acting both lawfully and in accordance with a legal duty. A school is a place of learning and it is within an officer’s legal duty, as here, to quell a disturbance. The record establishes that the officer was using appropriate force to carry out his duties when L.R. began unlawfully to batter him. The trial court correctly denied the motion for discharge on this ground.
The trial court was not, however, correct in disregarding the DJJ’s recommendation that L.R. be placed on probation. In committing L.R. to a residential facility, the court failed to state a sufficient reason to justify its departure. Before adjudicating L.R., the trial court expressed displeasure at the evidence it had heard, saying L.R.’s behavior was “atrocious” and that she was basically a “snotty sixteen-year-old kid,” who was disrespectful to the school, the students, the principal, and the officer. The court further stated that it would not tolerate such behavior, so it was going to impose a little “tough love” and commit her. Defense counsel argued in favor of imposing probation as recommended, noting that L.R. was now employed, had an infant to care for, and had no disciplinary problems in her new school, but the trial court disregarded those considerations:
That’s all great, but you know what, ... if you’re old enough to do that crime and do that to a police officer and act disrespectful, you didn’t have to come in here and blame the cop. You know, had you stood up earlier, maybe, at some point between the day it happened and today and said, “I made a mistake”; “I was upset that day”; “My stomach was hurting,” whatever — you know, that’s one thing, but to come in here and basically — you know what your defense was? It didn’t happen or the cop was a bigger guy than I am. That’s what your defense was. All right? So, I’ve heard enough.
We empathize with the trial court and share its view of L.R.’s attitude and behavior. The evidence presented clearly shows that her behavior was improper and disrespectful. However, the law does not recognize this as a justifiable basis to disregard the DJJ’s recommendation.
Section 985.23(3)(c), Fla. Stat. (2003), permits a court to place a juvenile in a restrictiveness level different from the one the DJJ recommends as long as the court states either in writing or on the record the reasons for disregarding that recommendation. See K.M.T. v. State, 695 So.2d 1309, 1310 (Fla. 2d DCA 1997). In addition to articulating its findings on the record, we require the trial court to indicate how its chosen restrictiveness level relates to the needs of the child. X.W. v. State, 903 So.2d 318, 320 (Fla. 2d DCA 2005) (quoting A.J.V. v. State, 842 So.2d 1027, 1029 (Fla. 2d DCA 2003), which quotes P.R. v. State, 782 So.2d 911, 913 (Fla. 5th DCA 2001), for the proposition that “ ‘reference [must be made to] the characteristics of the restrictiveness level vis-a-vis the needs of the child’ ”). Two sister courts also follow this rule. See A.G. v. State, 737 So.2d 1244, 1247 (Fla. 5th DCA 1999) (holding that the reasons *830 for disregarding the recommended level must additionally “reference the characteristics of the restrictiveness level vis-a-vis the needs of the child”); A.C.N. v. State, 727 So.2d 868, 370 (Fla. 1st DCA 1999) (agreeing that “ ‘the reason[s] must have reference to the characteristics of the restrictiveness level vis-a-vis the needs of the child’”) (quoting J.L.O. v. State, 721 So.2d 440, 443 (Fla. 5th DCA 1998) (Griffin, C.J., dissenting) (alternation in original)).
In committing L.R. to a residential facility instead of placing her on probation, the trial court failed to indicate how the restrictiveness level related to L.R.’s needs or how the nature of her offense required such commitment. Accordingly, we affirm the adjudication of delinquency, reverse the trial court’s disposition, and remand for a new disposition hearing.
CASANUEVA and KELLY, JJ„ Concur.
CANADY, J., Concurs specially with opinion.