VILLANTI, Judge.
N.P. appeals his adjudications of delinquency and the resulting dispositions in two separate cases. We affirm N.P.’s adjudications of delinquency in both cases without further comment. However, because the trial court departed upward from the recommended disposition of the Department of Juvenile Justice (DJJ) without providing sufficient reasons for the restrictiveness level imposed, we reverse the dispositions and remand for a new disposition hearing.
In circuit court case number 06-3470, N.P. pleaded no contest to one count of simple battery, and he was initially placed on probation for one year. Shortly thereafter, in circuit court case number 08-2484, N.P. pleaded guilty to one count of robbery by sudden snatching. Based on the new offense in case number 08-2484, N.P. also admitted that he had violated his probation in case number 06-3470. DJJ recommended that N.P. be placed on probation for these offenses. However, the trial coui't entered disposition orders in both cases confining N.P. to a moderate risk residential facility followed by aftercare until his nineteenth birthday.
In this appeal, N.P. contends that the trial court’s disposition orders erroneously fail to follow the recommendation of DJJ without providing sufficient reasons for the departure and without explaining why a moderate risk program is the most appropriate for him. We agree in part.
The supreme court recently explained what is required when a trial court seeks to enter a disposition order that deviates from DJJ’s recommended disposition:
“A trial judge may not deviate from DJJ’s recommendation at a juvenile delinquency disposition hearing simply because the judge disagrees with the rec *737 ommendation. See K.M. v. State, 891 So.2d 619, 620 (Fla. Sd DCA 2005). In order to deviate, a trial court must identify adequate reasons, grounded in the evidence, for disregarding the recommendation. See A.C.N. [v. State], 727 So.2d [368, 370 (Fla. 1st DCA 1999) ]. A judge may reweigh the same factors [that] the [DJJ] considered and come to a different conclusion. But, when the court does so, the court ‘must set forth its reasons in the context of the needs of the child.’ E.S.B. v. State, 822 So.2d 579, 581 (Fla. 1st DCA 2002). The judge’s findings ‘must have reference to the characteristics of the restrictiveness level vis-á-vis the needs of the child.’ Id. The judge must explain why the judge came to a different conclusion than the [DJJ], and explain why the new restrictiveness level is indicated.”
E.A.R. v. State, 4 So.3d 614, 636 (Fla.2009) (alterations in original) (quoting N.B. v. State, 911 So.2d 833, 835-36 (Fla. 1st DCA 2005)); see also L.R. v. State, 948 So.2d 827, 829-30 (Fla. 2d DCA 2007) (reversing for a new disposition hearing when the trial court did not explain why the disposition it ordered was more appropriate than that recommended by DJJ); M.S. v. State, 927 So.2d 1044, 1046 (Fla. 2d DCA 2006) (stating that when a trial court decides to depart from the restrictiveness level recommended by DJJ, it must support its decision with findings of fact that “ ‘reference the characteristics of the restrictiveness level vis-á-vis the needs of the child’ ” (quoting A.J.V. v. State, 842 So.2d 1027, 1029 (Fla. 2d DCA 2003))); X.W. v. State, 903 So.2d 318, 319-20 (Fla. 2d DCA 2005) (same). Thus, the “needs of the child” must be the focal point for the court when it is assessing where along the restrictiveness spectrum a child should be placed.
Here, the trial court did identify evidence contained in the record that it believed that DJJ had “overlooked” or “failed to sufficiently consider.” E.A.R., 4 So.3d at 634 (noting that a trial court may disregard DJJ’s recommendation when there is evidence that DJJ has overlooked, failed to sufficiently consider, or misconstrued). Specifically, the trial court noted that DJJ’s own staffing report included references to the comprehensive assessment performed by the Mid-Florida Center at the behest of DJJ. That comprehensive assessment recommended residential placement for N.P. to properly “address [his] behavioral problems” in light of his “escalating legal concerns.” Despite this clear recommendation in the comprehensive assessment, DJJ’s report to the court recommended that N.P. be placed on probation without explaining or otherwise addressing why DJJ was rejecting the recommendation contained in the comprehensive assessment. Having noted this discrepancy, the court asked on the record, “How does DJJ ignore the competent [sic] evaluation?” Thus, the trial court determined that DJJ had “overlooked” or “failed to sufficiently consider” the recommendation for residential placement contained in the comprehensive assessment that DJJ itself had ordered, and this was a sufficient basis for the court to deviate from DJJ’s recommendation.[1]
*738 However, even though the trial court properly supported its decision to deviate from DJJ’s recommendation, the trial court did not explain why a moderate risk facility — as opposed to a facility at some other restrictiveness level — was the most appropriate restrictiveness level visa-vis the needs of N.P. Case law uniformly holds that if a trial court chooses to depart from DJJ’s recommended disposition it must provide an explanation for why the restrictiveness level selected by the court better suits the needs of the child than the restrictiveness level recommended by DJJ. See, e.g., M.K. v. State, 4 So.3d 1271, 1273 (Fla. 1st DCA 2009) (reversing for a new disposition hearing when the trial court had failed to meet the requirements of E.A.R. concerning findings to support a disposition different from that recommended by DJJ); see also L.R., 948 So.2d at 830 (reversing for a new disposition hearing when the trial court “failed to indicate how the restrictiveness level related to L.R.’s needs or how the nature of her offense required such commitment”). The disposition orders in this case contain no such explanation. Thus, we must reverse and remand for a new disposition hearing at which the trial court can address this issue.
We do not intend this opinion to raise any question about the trial court’s exercise of its discretion at N.P.’s sentencing. This case is not about the legality of the disposition or the appropriateness of the discretion exercised by the trial court but instead is only about the trial court’s failure to adequately communicate why the restrictiveness level it selected was the most appropriate for N.P. Accordingly, on remand, if the trial court again chooses to depart from DJJ’s recommendation, it must “logically and persuasively explain why, in light of these differing characteristics [of various restrictiveness levels], one level is better suited to serving both the rehabilitative needs of the juvenile — in the least restrictive setting — and maintaining the ability of the State to protect the public from further acts of delinquency.” E.A.R., 4 So.3d at 633. If it cannot do so, the trial court must impose the probation recommended by DJJ.
Affirmed in part, reversed in part, and remanded for further proceedings.
ALTENBERND and WHATLEY, JJ., Concur.

. We note that the trial court also stated on the record that N.P. qualified as a serious habitual offender (SHO) based on his plea to the offense of robbery by sudden snatching. The trial court relied on N.P.'s alleged SHO eligibility as well as Mid-Florida Center's comprehensive assessment to support its decision to deviate from the restrictiveness level recommended by DJJ. However, robbery by sudden snatching is not a qualifying offense for an SHO. See § 985.47(l)(a), Fla. Stat. (2008); see also T.N. v. State, 896 So.2d 878, 880 (Fla. 2d DCA 2005) (holding that robbery by sudden snatching was not a qualifying offense under the prior version of section 985.47(l)(a)). Moreover, N.P. does not quali *738 fy as an SHO under any of the other subsections of section 985.47(1). Accordingly, because N.P. does not qualify as an SHO, the trial court may not deviate from DJJ’s recommendation on remand for this reason.