NORTHCUTT, Judge.
S.G., a juvenile, was adjudicated delinquent. On appeal, he complains of the circuit court’s decision to place him in a moderate-risk detention facility rather than the low-risk facility recommended by the Department of Juvenile Justice. We reverse the placement and remand for further proceedings in accordance with the supreme court’s recent decision in E.A.R. v. State, 4 So.3d 614 (Fla.2009).
S.G. was on juvenile probation for resisting an officer without violence when he committed a new offense by carrying a concealed weapon. In June 2008 he *726 admitted both the new offense and the resulting probation violation. The DJJ recommended that he be continued on probation, but at a hearing the next month the court committed him to a low-risk facility. S.G. does not challenge that placement.
While S.G. awaited an opening at a low-risk facility, he was placed on in-home detention. On August 1, 2008, he violated the detention order by being absent from his home. At a hearing to reevaluate S.G.’s placement, the State asked that he be sent to a moderate-risk facility. The DJJ, which had restaffed S.G.’s case after his preplacement detention violation, recommended that he continue with the low-risk commitment status. The Department advised that he would be leaving for his low-risk program the following week. The court instead committed S.G. to a moderate-risk facility. Its stated reason for doing so was: “if you can’t follow the pre-placement supervision that tells me that you need a more restrictive program.... ”
In E.A.R., the supreme court held that when a juvenile court departs from the DJJ’s recommended supervision level, it must explain why its preferred restrictiveness level, rather than the DJJ’s, provides the juvenile with the most appropriate services in the least restrictive setting. “The only rational or logical means through which the juvenile court may provide ‘reasons’ that explain, support, and justify” its preference for a particular restrictiveness level other than that recommended by the DJJ is first to “[ajrticulate an understanding of the respective characteristics of the opposing restrictiveness levels” and then to “logically and persuasively explain why, in light of these differing characteristics, one level is better suited” than the other. Id. at 638. These reasons “must provide a legally sufficient foundation for ‘disregarding’ the DJJ’s professional assessment.” Id. The court is required to discuss the restrictiveness level vis-a-vis the needs of the child. Thus, it must identify “significant information-that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child’s programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public.” Id.
According to E.A.R., when an appellate court is called upon to determine whether the circuit court has exercised appropriate discretion in disregarding the DJJ’s recommendation, it must analyze “(1) whether the juvenile court has employed the proper legal standard ... in providing its on-the-record departure reasons; and, if so, (2) whether its stated reasons are supported by a preponderance of the competent, substantial evidence contained within the record.” Id. at 638-69.
In this case, the circuit court’s brief explanation of its departure from the DJJ’s recommendation manifestly did not meet the legal standard enunciated in E.A.R. and recited above. Accordingly, we must reverse the placement and remand for further proceedings. If the court again chooses to depart from the DJJ’s recommended placement level, it must make the findings prescribed in E.A.R. See N.P. v. State, 18 So.3d 735, 738 (Fla. 2d DCA 2009).
We also question whether the circuit court’s previously stated reason for the departure—that S.G.’s failure to comply with preplacement detention demonstrated his need for a more restrictive placement than the DJJ’s recommended level—was supported by a preponderance of the evidence, as E.A.R. requires. See id. at 639. In K.M. v. State, 891 So.2d 619 (Fla. 3d DCA 2005), the Department recommended a moderate-risk placement, but the court placed the juvenile in a high-risk *727 facility, in part because she had run away from her foster family. The Third District noted that the girl had never been placed in a moderate-risk facility and so had never run away from such a placement. Thus, the court concluded, the evidence did not support a finding that a moderate-risk placement would be insufficient to keep the child under control. This reasoning would seem to apply to the court’s statement about S.G. in this case. We reiterate that if on remand the court again elects to depart from the DJJ’s placement recommendation, its reasons for doing so must be supported by a preponderance of the evidence.
Reversed and remanded.
VILLANTI and LaROSE, JJ, Concur.