PER CURIAM.
Appellant — a juvenile — challenges the trial court’s decision to upwardly depart from the sentencing recommendation given by the Department of Juvenile Justice (DJJ). We agree with Appellant that the trial court did not follow the requirements for imposing an upward departure found in E.A.R. v. State, 4 So.3d 614 (Fla.2009), and reverse.
Appellant was charged in a delinquency petition with committing sexual battery pursuant to section 794.011(2)(b), Florida Statutes (2010). He pled guilty, and the trial court accepted the plea and withheld adjudication of delinquency. The trial court placed Appellant on conditional probation, with two conditions being that he commit no new law violations and refrain from using drugs.
Four months later, Appellant’s probation officer issued an affidavit alleging Appellant had violated the conditions of his probation. In particular, the officer claimed Appellant had tested positive for marijuana twice and been caught leaving his home unsupervised on “several occasions.” Appellant admitted to committing these violations and the trial court accepted his plea. The trial court then ordered the DJJ to prepare a predisposition report (hereinafter a PDR) for the disposition hearing.
In the PDR, the DJJ found Appellant had no behavioral problems or incidents at home since the filing of the affidavit. It stated he had made significant improvements academically, and had been accepted into AMI/Jacksonville, a rigorous school. The PDR went on to state Appel *1112 lant had passed several recent drug tests — as well as failing one more drug test for marijuana — and had shown progress in his responsiveness to treatment. It concluded his risk to reoffend was moderate.
Attached to the PDR was a report from a licensed psychologist assigned to conduct a psychosexual evaluation of Appellant. She stated she would recommend releasing Appellant into probation if he received day treatment at AMI/Jacksonville, along with additional substance abuse and sex offender treatment from a licensed psychologist. Given this psychologist’s cautious recommendation, as well as the positive reports from Appellant’s school, the DJJ concluded the PDR with the following recommendation:
It is respectfully requested that [Appellant] be continued on probation with the added conditions that he enroll in and successfully complete AMI/Jacksonville, participate in substance abuse treatment including random urinalysis testing and successfully complete outpatient sex offender treatment as designated by his therapist and probation officer.
The PDR was then submitted at the disposition hearing, where the DJJ and Appellant asked the trial court to adopt the recommendation of probation. The trial court rejected the recommendation and placed Appellant in a moderate-risk residential program.
Section 985.433(7)(b), Florida Statutes (2010), governs the extent to which a trial court may deviate from a sentencing recommendation of the DJJ. It states:
The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons that establish by a preponderance of the evidence why [it] is disregarding the assessment of the child and the restrictiveness level recommended by the department.
Recently, in E.A.R., 4 So.3d at 638, the Florida Supreme Court clarified that to justify an upward departure, a trial court has to:
(1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential “lengths of stay” associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and
(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile — in the least restrictive setting — and maintaining the ability of the State to protect the public from further acts of delinquency.
(emphasis in original).
On appeal, a reviewing court must determine “whether the juvenile court has employed the proper legal standard in providing its on-the-record departure reasons[.]” Id. at 638-39. Because this is a pure question of law, the standard of review is de novo. See B.L.R. v. State, 74 So.3d 173, 175 (Fla. 1st DCA 2011).
Here, when rejecting DJJ’s recommended non-residential placement and ordering moderate risk commitment for Appellant, the trial court expressed concern about “what [Appellant] does when people are not watching him.” The court justified its decision by stating only that: “The child willfully violated probation with full knowledge of the consequences. The public safety can best be served in residential treatment.” We consider these reasons insufficient to satisfy E.A.R.
*1113 First, the trial court did not “articulate an understanding of the respective characteristics of the opposing restrictiveness levels[.]” E.A.R., 4 So.3d at 638. See M.H. v. State, 69 So.3d 325, 328 (Fla. 1st DCA 2011) (stating that although “a trial court, working routinely with juveniles, may have insight into the types of programs provided at certain juvenile detention facilities, E.A.R. requires a trial court place that knowledge on record if the judge intends to rely on these types of findings to support deviations”); L.S. v. State, 978 So.2d 220, 221 (Fla. 1st DCA 2008) (reversing a decision to deviate to a moderate-risk facility where the trial court failed to “reference the characteristics of a moderate risk commitment vis-a-vis Appellant’s, needs”).
Second, the trial court failed to “logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile — in the least restrictive setting — and maintaining the ability of the State to protect the public.” E.A.R., 4 So.3d at 638. See P.Y. v. State, 976 So.2d 1168, 1169 (Fla. 1st DCA 2008) (“[bjasing its decision on the protection of the public did not absolve the court of its responsibility to relate the level of commitment it imposed to the needs or attributes of the particular child”). As the supreme court explained in E.A.R.:
Simply listing “reasons that are totally connected to this analysis does not explain why one restrictiveness level is better suited for providing the juvenile offender” the m,ost appropriate disposi-tional services in the least restrictive available setting. § 985.03(21), Fla. Stat. (2007) (emphasis supplied); see also §§ 985.03(44)(a)-(3), 985.433(7)(a)-(b)[,] Fla. Stat. (2007). The failure to connect departure “reasons” to the juvenile court’s ultimate statutory duty during a disposition hearing completely undermines the Legislature’s carefully crafted statutory scheme. These “reasons” must “establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the [DJJ].” § 985.433(7)(b), Fla. Stat. (2007).
4 So.3d at 638.
Because the trial court failed to satisfy the requirements of E.A.R. when it deviated from the recommended disposition, we reverse the sentencing order and remand for the trial court to either make the necessary findings to support departing from the DJJ’s recommendation or, if it cannot, enter a new order imposing the probation originally recommended by the DJJ. See M.W. v. State, 58 So.3d 350, 351 (Fla. 1st DCA 2011).
REVERSED and REMANDED with directions.
THOMAS, ROBERTS, and MARSTILLER, JJ., concur.