LaROSE, Judge.
The trial court adjudicated J.H. delinquent. On appeal, J.H. challenges his placement in a high-risk facility, rather than in the moderate-risk facility recommended by the Department of Juvenile Justice (DJJ). We affirm the adjudication of delinquency without further discussion. We reverse the high-risk placement and remand for a new disposition hearing because the trial court departed from the DJJ recommendation without adequate justification.
The trial court found J.H. guilty of burglary of a dwelling and grand theft. The *1238 DJJ recommended a moderate-risk placement; the State wanted a high-risk placement. The trial court agreed with the State, observing that J.H. committed the burglary while awaiting trial on another burglary charge and that burglary has a long-lasting effect on the victims’ sense of safety and security.
In deciding whether the trial court exercised appropriate discretion in disregarding the DJJ’s recommendation, we must analyze “(1) whether the ... court has employed the proper legal standard ... in providing its on-the-record departure reasons; and, if so, (2) whether its stated reasons are supported by a preponderance of the competent, substantial evidence contained within the record.” E.A.R. v. State, 4 So.3d 614, 638-39 (Fla.2009). When the trial court departs from the DJJ’s recommended supervision level, it must “ ‘[a]rticulate an understanding of the respective characteristics of the opposing restrictiveness levels’ and ... ‘logically and persuasively explain why, in light of these differing characteristics, one level is better suited’ than the other.” S.G. v. State, 26 So.3d 725, 726 (Fla. 2d DCA 2010) (quoting E.A.R., 4 So.3d at 638). “[T]he ‘needs of the child’ must be the focal point for the court when it is assessing where along the restrictiveness spectrum a child should be placed.” N.P. v. State, 18 So.3d 735, 737 (Fla. 2d DCA 2009).
To deviate from the DJJ’s recommendation, the trial court must identify “significant information that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child’s programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public.” E.A.R., 4 So.3d at 638; see M.S. v. State, 927 So.2d 1044, 1046 (Fla. 2d DCA 2006) (stating that trial court departing from DJJ recommendation must state factual findings that “ ‘reference the characteristics of the restrictiveness level vis-á-vis the needs of the child’ ” (quoting A.J.V. v. State, 842 So.2d 1027, 1029 (Fla. 2d DCA 2003))). “[I]t must explain why its preferred restrictiveness level, rather than the DJJ’s, provides the juvenile with the most appropriate services in the least restrictive setting.” S.G., 26 So.3d at 726 (citing E.A.R., 4 So.3d at 638). In this case, the court’s explanation fell short of this legal standard.
The trial court did not explain adequately how a high-risk level of restrictiveness would better fit J.H.’s rehabilitative needs and public safety than a moderate-risk level of restrictiveness. We note that the DJJ did not ignore J.H.’s other pending burglary charge; it is addressed in the DJJ risk assessment report. Accordingly, we must reverse the disposition order and remand for a new disposition hearing. If the trial court again departs from the DJJ’s recommendation, it must make the findings prescribed in E.A.R. See N.P. v. State, 18 So.3d 735, 738 (Fla. 2d DCA 2009). If it cannot do so, it must place him in a moderate-risk facility as the DJJ recommended.
Affirmed in part, reversed in part, and remanded for further proceedings.
ALTENBERND and NORTHCUTT, JJ., Concur.