NORTHCUTT, Judge.
R.A., a juvenile, was adjudicated delinquent and committed to a moderate-risk facility. The juvenile court ordered this placement despite the recommendation of the Department of Juvenile Justice (DJJ) that R.A. be placed on probation. R.A. correctly contends, and the State concedes, that the juvenile court’s reasons for the deviation were insufficient under E.A.R. v. State, 4 So.3d 614 (Fla.2009). Accordingly, we reverse and remand for further proceedings.
In exchange for the State’s dismissal of several other offenses, R.A. entered pleas in three cases to solicitation to commit robbery, theft of a firearm, misdemeanor battery, and resisting without violence. The juvenile court adjudicated him delinquent and committed him to the custody of the DJJ for placement in a level six, moderate-risk residential facility. In support of its placement decision, the court quoted from a June 2012 comprehensive evaluation that recommended R.A.’s placement in a residential setting. However, in an Au *1183 gust 2012 amended predisposition report (PDR), the DJJ recommended that R.A. be placed on probation.[1] It repeated that recommendation at R.A.’s September 2012 disposition hearing, and the State agreed. R.A.’s attorney objected to the court’s deviation from the DJJ’s recommendation, citing E.A.R.
In E.A.R., the supreme court held that when a juvenile court decides to place a juvenile who has been adjudicated delinquent on a restrictiveness level different from the one recommended by the DJJ, it must
(1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential “lengths of stay” associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and
(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile — in the least restrictive setting — and maintaining the ability of the State to protect the public from further acts of delinquency.
Simply listing “reasons” that are totally unconnected to this analysis does not explain why one restrictiveness level is better suited for providing the juvenile offender “the most appropriate disposi-tional services in the least restrictive available setting.” § 985.03(21), Fla. Stat. (2007) (emphasis supplied)....
Id. at 638. The juvenile court’s departure reasons “must ‘establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the [DJJ].’ ” Id. (alteration in original) (quoting § 985.433(7)(b), Fla. Stat. (2007)). The supreme court specifically held that the juvenile court’s mere regurgitation or parroting of information in the DJJ’s comprehensive assessment and PDR is insufficient to establish acceptable reasons why the court is disregarding those documents and the DJJ’s recommended disposition. Id.
[I]nstead, the juvenile court’s stated “reasons,” must provide a legally sufficient foundation for “disregarding” the DJJ’s professional assessment and PDR by identifying significant information that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child’s programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public.
Id. at 638.
Under E.A.R., the juvenile court in this case abused its discretion by deviating from the DJJ’s recommended placement based on factors already considered by the DJJ. Therefore, we reverse the order of commitment and remand for a new disposition hearing. If the court again concludes that it should deviate from the DJJ’s placement recommendation, it must make the findings required by E.A.R. If it cannot do so, it must place R.A. on probation as recommended by the DJJ. See J.H. v. State, 100 So.3d 1236, 1238 *1184 (Fla. 2d DCA 2012); N.P. v. State, 18 So.3d 735, 738 (Fla. 2d DCA 2009).
Reversed and remanded with directions.
DAVIS and SLEET, JJ., Concur.

. The PDR is the culmination of the assessment process juvenile offenders must undergo upon entering the juvenile justice system. § 985.14(3)(a), Fla. Stat. (2012); E.A.R., 4 So.3d at 620-21. It contains the DJJ’s professional recommendation for an appropriate disposition. 4 So.3d at 620.