NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

A.V.,                                          )
                                               )
                Appellant,                     )
                                               )
v.                                             )        Case No. 2D16-175
                                               )
STATE OF FLORIDA,                              )
                                               )
                Appellee.                      )
_____)

Opinion filed April 12, 2017.

Appeal from the Circuit Court for
Hillsborough County; Manuel A. Lopez,
Judge.

Howard L. "Rex" Dimmig, II, Public
Defender, and Brooke Elvington,
Assistant Public Defender, Bartow, for
Appellant

Pamela Jo Bondi, Attorney General,
Tallahassee, and Jeffrey H. Siegal,
Assistant Attorney General, Tampa, for
Appellee.


SILBERMAN, Judge.


        A.V. appeals disposition orders in seven circuit court cases, four of which

are violations of probation.  He contends that the trial court erred by deviating from the

commitment restrictiveness level recommended by the Department of Juvenile Justice

(DJJ) in committing him to a high-risk program rather than to a nonsecure program. We affirm the disposition orders as to the adjudications of delinquency. We reverse the commitment to a high-risk program because the trial court did not make sufficient findings to depart from the DJJ's recommendation, and we remand for a new disposition hearing.

A.V.'s dispositions are for six misdemeanors, two third-degree felonies, and three second-degree felonies. The probation cases all involved misdemeanors. The felonies in the new cases are robbery by sudden snatching, grand theft, burglary of an unoccupied dwelling, burglary of an occupied dwelling, and dealing in stolen property. The robbery by sudden snatching involved taking a cellphone from a schoolmate's hand. One burglary involved stealing two watches, and the other burglary involved stealing and then selling an X-box game system.

The DJJ's predisposition report (PDR) recommended that A.V. be committed to a nonsecure program to be followed by probation. The PDR indicates that in addition to A.V.'s background, the DJJ took into consideration the nature of the offenses pending before the court and that A.V. committed felony offenses while on probation. A.V. had never been previously committed, and the DJJ recognized that probation had been ineffective, despite available services. The DJJ also recognized that A.V. was at high risk to reoffend and the resulting public safety concern. Thus, the DJJ recommended to commit A.V. for the first time and recommended a nonsecure residential program to be followed by probation with enhanced treatment services and programs.

At the disposition hearing, the State asserted that A.V. had other pending felonies and that a nonsecure program was "possibly inappropriate" and that "possibly a high-risk security program might be appropriate." A detective testified for the State and requested that A.V. be committed for as long as possible to protect the public and their property.

The trial court asked the probation officer to explain the difference between a nonsecure program and a moderate-risk program. The probation officer informed the court that there was no longer a moderate-risk level and that the next level up was high risk. The officer explained that the high-risk program lasts for about one and a half years. The average nonsecure program lasts six to nine months but can extend to one year depending on the child's behavior. In addition, the high-risk program is more secure. The high-risk program offered more services only by virtue of the length of the program. The officer did not explain the nature of the services or how they could benefit A.V.

The trial court indicated that probation had been a total failure, and the State argued that the child had additional felony counts not before the court. The probation officer explained that it could not consider pending felony offenses at the staffing, and thus its recommendation was based solely upon the adjudications before the court. The officer emphasized that although additional adjudications might have altered the recommendation, the nonsecure program was the "best fit" for the current charges before the court.

The trial court stated that it was entitled to disagree with the DJJ's recommendation and committed A.V. to a high-risk program. A.V.'s counsel objected to

a deviation and asserted that the DJJ "did a staffing and they've determined that he can obtain services and that a [nonsecure] residential placement is the least restrictive means possible in order for him to get those services while maintaining the protection of the public at the same time."

In deviating from the DJJ's recommendation, the trial court expressly stated that it was not considering the pending charges and that A.V. was "innocent of those charges as we sit here today." The trial court then stated that it would "write a very detailed order. So you can look at it and the Second District can look at it." The trial court stated that the order would be ready that day or the next day. No such order appears in our record or is listed in the case docket.

The trial court failed to make sufficient findings to support its deviation from the DJJ's recommendation of commitment to a nonsecure program as required by the Florida Supreme Court's decision in E.A.R. v. State, 4 So. 3d 614 (Fla. 2009). In order to support a departure disposition the trial court must:

> (1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels *including* (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential "lengths of stay" associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and

> (2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile—in the least restrictive setting—and maintaining the ability of the State to protect the public from further acts of delinquency.

Id. at 638. To support a deviation "from the DJJ's recommendation, the trial court must identify 'significant information that the DJJ has overlooked, failed to sufficiently

consider, or misconstrued with regard to the child's programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public.' " J.H. v. State, 100 So. 3d 1236, 1238 (Fla. 2d DCA 2012) (quoting E.A.R., 4 So. 3d at 638).

Our record shows that the DJJ considered the same factors that the trial court considered, and the trial court did not point to any information that the DJJ overlooked or misconstrued. The trial court appeared to favor the high-risk program because it was longer and, only by virtue of its length, could provide more services. But there was no mention of what services were offered and whether they would be beneficial to A.V. The trial court failed to meet the standard of explaining "why its preferred restrictiveness level, rather than the DJJ's, provides the juvenile with the most appropriate services in the least restrictive setting." Id. (quoting S.G. v. State, 26 So. 3d 725, 726 (Fla. 2d DCA 2010)).

In fact, the trial court seemed to recognize that its oral findings at the disposition hearing were insufficient to support a deviation because the trial court stated that it would enter a detailed order. Because we lack such an order, the record does not support the trial court's deviation in committing A.V. to a high-risk program. Therefore, we affirm the disposition orders as to the adjudications of delinquency but reverse the commitment to a high-risk program. We remand for a new disposition hearing and direct that if the trial court again departs from the DJJ's recommendation the trial court must make findings to satisfy the requirements of E.A.R. See J.H., 100 So. 3d at 1238. If the trial court cannot make such findings, the court must order commitment as the DJJ recommends. See id.

Affirmed in part, reversed in part, and remanded.

- 5 -

KELLY and WALLACE, JJ., Concur.