DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

T.S.,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2025-0022

_____

February 18, 2026

Appeal from the Circuit Court for Sarasota County; Andrea Watt McHugh, Judge.

Jason T. Forman of Law Offices of Jason T. Forman, P.A., Fort Lauderdale, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Angela H. Fernandez, Assistant Attorney General, Tampa, for Appellee.

MORRIS, Judge.

T.S. appeals from an adjudication of delinquency for two counts of lewd or lascivious molestation by a person less than eighteen years of age against a person less than twelve years of age. We find no error in the denial of T.S.'s motion for judgment of dismissal or the admission of child hearsay statements, and thus we affirm the adjudication of delinquency without further comment. While we do not agree with T.S.

that the trial court's decision to upwardly depart when entering the disposition constituted a vindictive sentence, we conclude that the trial court erred by failing to comply with procedural requirements when entering the disposition.

In determining whether a trial court followed the proper procedure when upwardly departing in a disposition for a juvenile, we employ a de novo review. *T.W.R. v. State*, 80 So. 3d 1110, 1112 (Fla. 1st DCA 2012).

"A trial judge may not deviate from [the] DJJ's[1] recommendation at a juvenile delinquency disposition hearing simply because the judge disagrees with the recommendation." *E.A.R. v. State*, 4 So. 3d 614, 636 (Fla. 2009) (quoting *N.B. v. State*, 911 So. 2d 833, 835 (Fla. 1st DCA 2005)). "A judge may reweigh the same factors [that] the [DJJ] considered and come to a different conclusion[, but if it] does so, the court 'must set forth its reasons in the context of the needs of the child.' " *N.B.*, 911 So. 2d at 835 (quoting *E.S.B. v. State*, 822 So. 2d 579, 581 (Fla. 1st DCA 2002)). "The judge's findings 'must have reference to the characteristics of the restrictiveness level vis-a-vis the needs of the child.' " *Id.* at 836 (quoting *E.S.B.*, 822 at 581). "The judge must explain why the judge came to a different conclusion than the [DJJ] did[] and explain why the new restrictiveness level is indicated." *Id.* The judge's stated reasons must be supported by competent, substantial evidence. *E.A.R.*, 4 So. 3d at 639.

> The only rational or logical means through which the juvenile court may provide "reasons" that explain, support, and justify why one restrictiveness level is more appropriate than another—and thereby rationalize a departure disposition—is for the court to:
>
> (1) Articulate an understanding of the restrictiveness characteristics of the opposing restrictiveness levels

---

[1] Department of Juvenile Justice

*including* (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential "lengths of stay" associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and

(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile—in the least restrictive setting—and maintaining the ability of the State to protect the public from further acts of delinquency.

*Id.* at 638. "Simply listing 'reasons' that are totally unconnected to this analysis does *not* explain why one restrictiveness level is better suited for providing the juvenile offender with 'the *most appropriate* dispositional services in the *least restrictive* available setting.' " *Id.* at 633 (quoting § 985.03(21), Fla. Stat. (2007)). "[R]egurgitating factors or information provided by, and contained within, the DJJ's comprehensive assessment and [recommendation] does *not* establish or provide the statutorily required 'reasons' that explain why the court is 'disregarding' these documents *and* the DJJ's corresponding disposition recommendation." *Id.* In order to disregard the recommendation, the trial court must identify "significant information that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child's programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public." *Id.* at 634. "In large part, this is why the juvenile court is permitted to consider live testimony and other evidentiary items not included within the DJJ's comprehensive assessment and [recommendation]." *Id.*

Here, the trial court initially stated that the safety of the community and rehabilitation of T.S. were the primary driving factors in the trial court's disposition decision, but the trial court also stated that it

had to think about T.S.'s safety and well-being. While recognizing that younger brains are "amenable to treatment and growing," the trial court listed its concerns, primarily that neither T.S. nor his parents appreciated his need for intensive treatment, a factor which the trial court believed was undervalued at the DJJ staffing. The trial court also noted that the victim attempted to resist T.S. but that T.S. did not honor her request; the court explained that that was another factor that was missing at staffing because the DJJ was not present at trial. The trial court explained its concern about the effect that T.S.'s exposure to pornography had on him, and the trial court stressed that it was important that T.S. have no access to it while in sex offender treatment. The trial court explained further that it was concerned that T.S. might be able to access pornography in the community, especially because T.S.'s parents did not appreciate his need for treatment. Ultimately, the trial court decided to depart from the DJJ's recommendation; the trial court departed upward by committing T.S. to a moderate-risk sex offender program with conditional release.

While the trial court did explain that it found the DJJ recommendation lacking because the DJJ did not hear testimony at trial and because of T.S.'s parents' lack of appreciation about the need for T.S.'s treatment, the trial court did not articulate its understanding of the respective characteristics of the opposing restrictiveness levels, including (but not limited to) the type of child each level was designed to serve, the divergent treatment programs and services available to the juvenile, or the lengths of stay associated with each level. *Cf. E.A.R.*, 4 So. 3d at 638 (listing factors which trial courts must explain when deviating from DJJ recommendation). For example, while the trial court mentioned its concern about whether T.S. would have access to

4

pornography if he was in the community, the trial court did not explain how a moderate-risk facility offered divergent treatments or services different from the other levels, nor did the trial court recognize the potential length of stay associated with *each* level (though it did explain how long T.S. might serve in the moderate-risk facility). The trial court also failed to explain why the moderate-risk facility was better to serve both T.S.'s rehabilitative needs in the least restrictive setting while also protecting the public from further acts of delinquency. The trial court's findings were insufficient to meet the requirements set forth in *E.A.R.*, and we reject the State's arguments to the contrary.

Because the trial court failed to comply with the procedural requirements for departing from the DJJ's recommendation, we must reverse T.S.'s disposition and remand for the trial court to either include more specific findings in the disposition order or to enter a new disposition order in accord with the DJJ recommendation. *See S.G. v. State*, 26 So. 3d 725, 726 (Fla. 2d DCA 2010); *M.H. v. State*, 69 So. 3d 325, 328-29 (Fla. 1st DCA 2011).

Adjudication affirmed; disposition reversed and remanded.

SILBERMAN and LaROSE, JJ., Concur.

_____

Opinion subject to revision prior to official publication.