PER CURIAM.
For reasons similar to those that led to our reversal of the trial court’s delinquency disposition in S.B. v. State, 16 So.3d 256 (Fla. 4th DCA 2009), we reverse the disposition order in this case. The trial court’s reasons for departing from the Department of Juvenile Justice’s recommendation were inadequate under E.A.R. v. State, 4 So.3d 614 (Fla.2009).
On May 19, 2008, the child, B.N., was placed on probation with the Department of Juvenile Justice (DJJ) after entering a no contest plea to the charge of robbery. About seven months later, on January 20, 2009, B.N. was charged by affidavit with violation of probation for being suspended from school and testing positive for marijuana. After B.N. pled no contest to those charges, DJJ completed a predisposition report (PDR) and recommended that B.N. be placed back on probation and be required to earn his GED, seek and maintain employment, and complete an additional fifty hours of community service. DJJ also recommended that B.N. attend and successfully complete Program Aware at the Substance Abuse Council.
The trial court rejected DJJ’s recommendation, adjudicated defendant delinquent, and committed him to a moderate risk residential program. After reciting the requirements and guidelines set forth in E.A.R., the court orally explained its reasons for departing from the DJJ’s recommendation:
He has committed a serious property offense and the violation of probation for the robbery offense. He has done nothing on probation. He has obvious, clearly has a drug program (sic) and that, but high risk was not appropriate for him, but I believe he does fit the model precisely. I also considered the fact that these time frames, the average length of stay is from six to eighteen months, depending on his program type and the progress he makes through the program. I’ve also considered the dictates of 985.433 in considering the seriousness of the offense to the community. I find that the protection of the community requires the adjudication and commitment. The, the original offense was committed in an aggressive, violent manner. It was ágainst persons. I’ve considered the record and previous criminal history of the child and prospects for adequate protection of the public and likelihood of reasonable rehabilitation and find that there is none.
*517 The trial court then issued a written disposition order listing the following reasons for departing from the DJJ’s recommendation:
a preponderance of the evidence established the need for a higher level based on the [Defendant’s] sophistication, maturity, past record and history, nature of the offense and the manner in which it was committed; need to protect the community; need to provide more services to the child; and seriousness of offense to community; protection of community requires adjudication and commitment; offense committed is violent, aggressive and premeditated manner; offense against persons not property; prior criminal record; no prospects for adequate protection of public; no likelihood of reasonable rehabilitation if committed to community services program or facility; child continues to abuse drugs; refuses to go to school.
B.N. filed a notice of appeal and later unsuccessfully moved to correct the disposition under Florida Rule of Juvenile Procedure 8.135(b)(2). He argues that the trial court, in committing him to a restrictiveness level other than that recommended by DJJ, failed to comply with the requirements of E.A.R.
To deviate from a DJJ recommendation, E.A.R. requires a trial court to:
(1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels .... including (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential “lengths of stay” associated with each level, and the divergent treatment programs and services available to the juvenile at these levels (the DJJ possesses the expertise to provide this information); and
(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile—in the least restrictive setting—and maintaining the ability of the State to protect the public from further acts of delinquency.
4 So.3d at 688.
In addition, the trial court’s stated explanation for deviation from the DJJ’s recommendation must provide a:
legally sufficient foundation for “disregarding” the DJJ’s professional assessment and PDR by identifying significant information that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child’s programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public.
Id. at 634.
We agree with appellant that “... the trial court did not logically and persuasively explain why the moderate risk commitment was better suited to serving both the rehabilitative needs of the juvenile—in the least restrictive setting—and maintaining the ability of the State to protect the public from further acts of delinquency. Nor did the court identify significant information that DJJ overlooked, or failed to sufficiently consider, or misconstrued with regard to the child’s programmatic, rehabilitative needs along with the risks that the unrehabilitated child posed to the public.” As in S.B., the court’s reasons for departing in this case were inadequate under E.A.R.
Accordingly, we reverse and remand for a new disposition hearing.

Reversed and Remanded.

WARNER, TAYLOR and MAY, JJ„ concur.