VAN NORTWICK, J.
J.B.S., a juvenile, appeals a trial court order adjudicating him delinquent and committing him to the Department of Juvenile Justice (DJJ) for placement in a moderate risk facility with post-commitment probation. J.B.S. contends the trial court erred by committing him to a restrictiveness level different than the level recommended by DJJ without complying with the requirements of E.A.R. v. State, 4 So.3d 614 (Fla.2009). After a thorough review of the record, we are satisfied that the trial court did not contravene the requirements of the applicable statutes or E.A.R. in deviating from the recommendation of probation in the predisposition report (PDR) and following DJJ’s subsequent recommendation that a moderate risk placement would be appropriate for J.B.S. Accordingly, we affirm.
J.B.S. pled guilty to lewd and lascivious molestation of a victim less than 12 years old, and false imprisonment of a child and in the process abusing or exploiting the child. The trial court requested DJJ to provide a PDR and set the matter for a hearing. A conference was held with the juvenile probation officer supervisor, the juvenile probation officer, the assistant state attorney and defense counsel in attendance. In the PDR, after noting that J.B.S. had no prior record, DJJ recommended that J.B.S. receive probation and that J.B.S. complete a community treatment program.
At the hearing held on July 19, 2011, the assistant state attorney advised the trial court that the State was not in agreement *963 with the recommendation for probation and was seeking commitment instead. Counsel explained to the court that there was some confusion about the wishes of the victim’s parents. Although the juvenile probation officer believed the victim’s family supported probation, the victim’s father testified that the victim’s encounter with J.B.S. had a devastating effect on his son and, although he did not want J.B.S. to go to jail, he wanted him to be placed in a residential facility. Both the assistant state attorney and the trial court expressed concern that the behavior in this case was not typical inappropriate sexual behavior among children because J.B.S. planned this encounter with the victim and it was not a spontaneous, spur of the moment transgression. The trial court recognized that section 985.475, Florida Statutes (2010), governing juvenile sexual offenders, would apply.
Thereafter, the court determined that J.B.S. should be committed to the DJJ for residential treatment. The court asked DJJ to recommend a restrictiveness level treatment facility. Defense counsel objected to the deviation from the probation recommendation in the PDR, relying upon a rule announced in E.A.R. v. State, that, in applying section 985.433(7)(b), Florida Statutes (2007), the court cannot deviate from the recommendation of DJJ as to the restrictiveness level of a commitment without explaining the reasons for the departure in terms of the characteristics of the imposed restrictiveness level vis-a-vis the rehabilitative needs of the child. 4 So.3d at 616-17. The court disagreed that E.A.R. applied and explained:
[TJhere are appellate cases, which in my view incorrectly treat a court’s determination to commit a defendant when the Department has recommended probation as being subject to the criteria in the E.A.R. v. State decision from the Supreme Court ...
My view is that treating this case or any other where the Department has recommended probation and then which the Court determines to do a commitment as being subject to those appellate rules is mistaken for a couple of reasons, two reasons in this case.
First, the ... ordinary disposition statute, section 985.433 does not support that position. That statute clearly says in subsection (6) that the determination to commit, or not to commit is peculiarly [for] the Court.
[[Image here]]
[Subsection (6) ] concludes by saying it is the intent of the Legislature that the criteria set forth in this subsection are general guidelines to be followed at the discretion of the court and not mandatory requirements of procedure. It is not the intent of the Legislature to provide for the appeal of the disposition made under this section.
Therefore, my view is that even without looking to the sexual offender’s disposition statute [section 985.475], the decision to commit or not to commit is particularly that of the court and not a recommendation of the Department, which the court can only depart from by going to the rather extraordinary lengths that E.A.R. calls for.
E.A.R. basically says the Court has to describe with reference to the description of the different levels, ... the restrictiveness levels rather of commitment facilities, why one is more suited to a more particular defendant than the other. We may get to that at the next hearing. But that, the whole scheme, which E.A.R. talks about and which E.A.R. interprets ... only makes sense to discuss ... in the context of a recommendation to a restrictiveness level. It doesn’t make sense to discuss it in the *964 context of a decision to commit, or not commit.
After reviewing the provisions of section 985.475, including the requirement that the Department submit a detailed plan pursuant to section 985.475(2)(c), the court expressed doubt “that the section [985J433 criteria [addressed in] E.A.R. [apply].” Nonetheless, the court felt that “section [985.]433 does apply in that I’m still required to get a restrictiveness level recommendation from the Department.” The court advised defense counsel that J.B.S. was not precluded from coming to the next hearing with a plan as described in section 985.475 and arguing for probation rather than commitment.
A multidisciplinary conference was held, after which the juvenile probation officer notified the trial court that DJJ was recommending that J.B.S. be placed in a moderate risk program. The trial court held another hearing on August 11, 2011. At that hearing, Dr. Hodges, a psychologist, testified about an available community-based sexual offender treatment program. He opined that J.B.S. would be a good candidate for this community-based treatment program and that a residential treatment program would not be appropriate for him. The trial court spoke to a commitment manager in Panama City, who explained that she had not been consulted when DJJ made the recommendation of probation in the PDR. It was her recommendation that J.B.S. should attend a residential treatment facility because the act involved was premeditated and J.B.S. had lured the victim to his home. She explained her recommendation, as follows:
I did a lot of reading and looking at it thinking about this young man. And I know that they’re very concerned about his future, but I’m very concerned that if he gets any kind of charge related to something like this again, this boy is going to get waived, if he’s not an adult, he’s going to go to prison. I mean, that’s a big fear for me. Like I said, for his safety, but I’m very concerned with the way that (unintelligible) this was premeditated. I’ve dealt with a lot of sex offenders before ... they weren’t premeditated, it was sort of a spontaneous thing that a kid tried, and that’s not what happened here.
At the conclusion of the hearing, the court rejected J.B.S.’s request for probation, adjudicated him delinquent, and ordered that he be placed in a moderate risk commitment facility.

The Applicable Statutes

Section 985.475(2), governing the adjudication of juvenile sexual offenders, provides in pertinent part:
(2) Following a delinquency adjudicatory hearing under s. 985.35, the court may on its own or upon request by the state or the department and subject to specific appropriation, determine whether a juvenile sexual offender placement is required for the protection of the public and what would be the best approach to address the treatment needs of the juvenile sexual offender.
This statute authorizes the court to order the DJJ “to conduct or arrange an examination to determine whether the juvenile sexual offender is amenable to community-based treatment.” Id. Subsection 2(a) of section 985.475 sets forth the matters the DJJ must include in the report of the examination. This statute requires that this report must “assess the juvenile sexual offender’s amenability to treatment and relative risk to the victim and the community.” § 985.475(2)(b).
Under subsection 2(d) of section 985.475, after the court receives the DJJ report on the proposed plan of treatment, the court must “consider whether the community and the offender will benefit from use of *965 juvenile sexual offender community-based treatment alternative disposition and consider the opinion of the victim or the victim’s family as to whether the offender should receive a community-based treatment alternative disposition under this subsection.” Under subsection 2(i) of the statute, if, after considering the above matters, the court concludes “that the juvenile sexual offender is not amenable to community-based treatment, the court shall proceed with a juvenile sexual offender disposition hearing under s. 985.441.”
Section 985.441, Florida Statutes (2010), provides in pertinent part:
(1) The court that has jurisdiction of an adjudicated delinquent child may, ...
(c)l. Following a delinquency adjudicatory hearing under s. 985.35 and a delinquency disposition hearing under s. 985.433 that results in a commitment determination, the court shall, on its own or upon request by the state or the department, determine whether the protection of the public requires that the child be placed in a program for serious or habitual juvenile offenders and whether the particular needs of the child would be best served by a program for serious or habitual juvenile offenders as provided in s. 985.47. The determination shall be made under ss. 985.47(1) and 985.433(7).
[[Image here]]
(d) Commit the child to the Department for placement in a program or facility for juvenile sexual offenders in accordance with s. 985.48 subject to a specific appropriation for such a program or facility.
Section 985.433, Florida Statutes (2010), governs disposition hearings in delinquency proceedings. Subsection (6) of this statute provides that: “The first determination to be made by the court is a determination of the suitability or nonsuitability for adjudication and commitment of the child to the department.” The statute mandates that the court’s determination “shall include consideration of the recommendations of the department, which may include a predisposition report.” Subsection (6) and section 985.433, Florida Statutes (2010), set forth in substantial detail the required contents of the PDR and the criteria it must evaluate. Subsection (6) also expressly delegates wide discretion to trial courts in determining whether to commit a child to the DJJ, as follows:
It is the intent of the Legislature that the criteria set forth in this subsection are general guidelines to be followed at the discretion of the court and not mandatory requirements of procedure. It is not the intent of the Legislature to provide for the appeal of the disposition made under this section.
If the court determines to commit a child to the DJJ, subsection (7) of section 985.433 requires that:
... such determination shall be in writing or on the record of the hearing. The determination shall include a specific finding of the reasons for the decision to adjudicate and to commit the child to the department, including any determination that the child was a member of a criminal gang.
Subsection (7)(a) requires the juvenile probation officer to “recommend to the court the most appropriate placement and treatment plan, specifically identifying the restrictiveness level most appropriate for the child.... The court shall consider the department’s recommendation in making its commitment decision.”
Subsection (7)(b) of section 985.433 governs the restrictiveness level at which the court may commit a juvenile to the DJJ. Subsection 7(b) also constrains the authority of the trial court to disregard the restrictiveness level recommended by the DJJ, as follows:
*966 (b) The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. Any party may appeal the court’s findings resulting in a modified level of restrictiveness under this paragraph.

E.A.R. v. State

At the heart of the E.A.R. decision was the construction to be placed upon section 985.433(7)(b). The Florida Supreme Court described the issue in E.A.R. as follows:
The precise issue at the center of this conflict is whether chapter 985, Florida Statutes (2007), requires juvenile courts to justify departures from the Department of Juvenile Justice’s (“DJJ”) recommended dispositions by explaining a judge’s “reasons” for a departure in terms of the characteristics of the imposed restrictiveness level vis-á-vis the rehabilitative needs of the child (i.e., a utilitarian comparison between (1) the type of custodial confinement that the juvenile will experience, and (2) the most appropriate dispositional services for the child given his or her individual needs and treatment plan).
4 So.3d at 616-17. The court noted that “[f]rom a conceptual standpoint, “disposition” is the phase of a juvenile delinquency proceeding that roughly corresponds to sentencing during a criminal proceed-ing_” Id. at 616 n. 2. However, the court recognized the differences in the two, pointing out that chapter 985 attempts to rehabilitate the child, while the primary purpose of criminal sentencing is to punish the offender. Id.
The court explained the two-step process in sections 985.433(6) and (7) as follows:
The juvenile court’s first responsibility is it to determine whether the child should be adjudicated and committed. See § 985.433(6), Fla. Stat. (2007). In making this decision, the court may consider a nonexclusive list of factors contained in section 985.433(6)(a)-(h). If the court determines that it should adjudicate the child and commit him or her to the custody of the DJJ, it is required to state this determination on the record or in writing. See § 985.433(7), Fla. Stat. (2007). “The determination shall include a specific finding of the reasons for the decision to adjudicate and to commit the child to the Department, including any determination that the child was a member of a criminal street gang.” Id. With regard to the restrictiveness level of any commitment to DJJ custody:
The court shall commit the child to the Department at the restrictiveness level identified or may order placement at a different restrietiveness level. The court shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. Any party may appeal the court’s findings resulting in a modified level of restrictiveness under this paragraph.
§ 985.44(7)(b), Fla. Stat. (2007) (emphasis supplied).
Id. at 624.
E.A.R. concludes by setting forth the steps the trial court must take prior to deviating from a DJJ restrictiveness level recommendation under subsection (7)(b), as follows:
The only rationale or logical means through which the juvenile court may *967 provide “reasons” that explain, support, and justify why one restrictiveness level is more appropriate than another — and thereby rationalize a departure disposition — is for the court to:
(1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential “lengths of stay” associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and
(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile — in the least restrictive setting — and maintaining the ability of the State to protect the public from further acts of delinquency.
Id. at 638.
Thus, before disregarding the DJJ’s recommended restrictiveness level assessment the court must “[identify] significant information that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child’s programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public.” Id. at 634.

Analysis

There are several distinctions between this case and E.A.R. First, in E.A.R., DJJ did not recommend probation, but instead recommended moderate risk residential commitment. It was the trial court’s decision to commit E.A.R. to a high-risk residential program that was the issue in E.A.R., 4 So.3d at 625. Second, the PDR in E.A.R. was more comprehensive than the initial PDR in this case and contained a multidisciplinary assessment culminating in a recommendation of a moderate risk residential commitment. The PDR in this case did not contain any analysis of the classification and placement process nor make a recommendation as to the classification risk for J.B.S.
After reviewing the statutes and the express language of E.A.R., we agree with the trial court that E.A.R. does not apply to the initial determination made under section 985.433(6), which gives the trial court wide discretion in determining the suitability of commitment of the child to the Department. E.A.R. addressed the “precise issue” of the meaning to be accorded subsection (7)(b) of section 985.433. The requirements of subsection (7)(b) do not come into play here, because the trial court did not depart from the restrictiveness level recommended by DJJ. Specifically, the trial court considered the PDR, ordered a further multidisciplinary assessment and, after receiving the recommendation from DJJ as to a restrictiveness level, followed that recommendation.
J.B.S. argues that our recent decision in M.H. v. State, 69 So.3d 325 (Fla. 1st DCA 2011), compels reversal here. We do not agree. In M.H., it is apparent that the recommendation of probation was in connection with a determination of the restrictiveness level under section 985.433(7)(b). Id. at 326. Thus, when “the trial court rejected the recommendation for probation and placed appellant in a moderate risk facility,” id., E.A.R. required the trial court to “engage in a well-reasoned and complete analysis of the PDR and the type of facility to which the trial court intends to send the child.” Id. at 328.
On reviewing the statutory framework of sections 985.433 and 985.475, we are not certain that section 985.433(7)(b) applies to proceedings under section 985.475.[1] We *968 do not have to decide whether section 985.43S(7)(b) applies to a proceeding under section 985.475, however, because the trial court here did not deviate from the restrictiveness level recommended by DJJ. Here, the-juvenile court carefully structured the proceeding as a two-step process in compliance with sections 985.433(6) and (7)(b). The trial court sought and received recommendations from the DJJ and its commitment manager as to a restrictiveness level and followed the revised recommendation of DJJ. The trial court exercised the authority granted to it by chapter 985 in a manner that does not conflict with the Florida Supreme Court’s decision in E.A.R.
AFFIRMED.
DAVIS and PADOVANO, JJ., concur.

. For example, section 985.441(l)(c), Florida Statutes (2010), applies to a commitment of a *968 juvenile to the DJJ for placement in a program or facility for serious or habitual juvenile offenders. Section 985.441(l)(c)l expressly requires a "delinquency disposition hearing under s. 985.433 that results in a commitment determination” as a condition to the court ordering placement in a program for serious or habitual juvenile offenders. By comparison, section 985.441(d), which gov-eras a commitment to the DJJ for placement in a program or facility for juvenile sexual offenders, makes no reference to a delinquency disposition hearing under section 985.433. Presumably, had the legislature intended to require a trial court to comply with section 985.433(7)(b) in a disposition proceeding under section 985.475, it would have so provided.