HAZOURI, J.
The Appellant, D.R.R., appeals the order committing him to a high-risk program after he violated his probation. He contends reversal is required because the trial court failed to follow the dictates of an opinion of the Florida Supreme Court, E.A.R. v. State, 4 So.3d 614 (Fla.2009). We agree.
D.R.R. was placed on probation for burglary of a structure while armed and grand theft. Subsequently, the State filed a petition alleging a violation of probation based on a curfew violation and school suspensions, and D.R.R. entered an open plea of guilty to the court. The Department of Juvenile Justice (DJJ) recommended that D.R.R. be committed to a moderate-risk facility. The recommendation was made with knowledge of at least one of the new offenses, as well as the curfew violations, school suspensions, D.R.R.’s release from a youth ranch for breaking a windshield, his failure to make himself available for certain services, and his positive drug test.
At the disposition hearing, the judge noted that D.R.R. had two theft arrests while his case was pending. The judge observed that if D.R.R. was committed to a moderate-risk facility, he would be released after five days and wait for a bed for months. The judge found that a Level 8 commitment was appropriate because D.R.R. would be detained until a bed became available, and he would not be able to abuse drugs in the interim. D.R.R. was adjudicated delinquent and ordered detained pending commitment to a Level 8 program. In its written order, the court made the following findings:
1. Child continues to violate the law while cases pending.
2. Child’s sister testified child is out of control; won’t follow rules; out all night; missing for long periods; hangs with convicted drug dealer[1]; and will not follow court rules/any rules.
■3. Child is a risk, imminent, to community.
4. Child is a risk to himself.
A trial court’s departure from the DJJ recommendation is reviewed for abuse of discretion. J.W. v. State, 958 So.2d 1143, 1145-16 (Fla. 4th DCA 2007). However, whether a juvenile court has employed the proper legal standard in providing its departure reasons is a question of law subject to de novo review. B.L.R. v. State, 74 So.3d 173, 175 (Fla. 1st DCA 2011).
In E.A.R., the Florida Supreme Court explained what trial courts must do in order to comply with the requirements of chapter 985, Florida Statutes, when departing from the DJJ’s disposition recommendation:
The only rational or logical means through which the juvenile court may provide “reasons” that explain, support, and justify why one restrictiveness level *682 is more appropriate than another — and thereby rationalize a departure disposition — is for the court to:
(1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential “lengths of stay” associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and
(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile — in the least restrictive setting — and maintaining the ability of the State to protect the public from further acts of delinquency.
Simply listing “reasons” that are totally unconnected to this analysis does not explain why one restrictiveness level is better suited for providing the juvenile offender “the most appropriate disposi-tional services in the least restrictive available setting.” The failure to connect departure “reasons” to the juvenile court’s ultimate statutory duty during a disposition hearing completely undermines the Legislature’s carefully crafted scheme. These “reasons” must “establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the [DJJ].” ... We conclude that ... the juvenile court’s stated “reasons,” must provide a legally sufficient foundation for “disregarding” the DJJ’s professional assessment and PDR by identifying significant information that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child’s programmatic, rehabilitative needs along with the risks that the unre-habilitated child poses to the public.
E.A.R., 4 So.3d at 638 (citations omitted).
The record reflects that the court had legitimate concerns regarding whether a moderate-risk commitment would best serve the child’s needs. Nevertheless, we have recognized that even if the trial court gives “cogent reasons why more severe punishment” would better serve the juvenile and protect the public, the trial court must still “comport with the specific methodology for pronouncing disposition the Court has now required in E.A.R.” E.E. v. State, 7 So.3d 1140, 1142 (Fla. 4th DCA 2009).
The court’s findings, oral and written, did not meet the requirements of EA.R., because they did not “[ajrticulate an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential ‘lengths of stay’ associated with each level, and the divergent treatment programs and services available to the juvenile at these levels.” E.A.R., 4 So.3d at 638. Further, the findings did not “explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile — in the least restrictive setting — and maintaining the ability of the State to protect the public from further acts of delinquency.” Id. The judge merely found that D.R.R. would have to wait longer for placement in a program if he was sentenced to a moderate-risk commitment versus a high-risk commitment, that he would not be able to do drugs while waiting for placement in a Level 8 program, and that the Level 8 program was more intensive. The judge did not articulate an understanding of the type of child the different levels serve, the length of stays in each, and the type of *683 treatment and programs each level provides. This was insufficient. “While a trial court, working routinely with juveniles, may have insight into the types of programs provided at certain juvenile detention facilities, E.A.R. requires a trial court place that knowledge on record if the judge intends to rely on these types of findings to support deviations.” M.H. v. State, 69 So.3d 325, 328 (Fla. 1st DCA 2011).
We reverse and remand for a new disposition hearing. The trial court may again impose a Level 8 commitment if it is able to make the findings required by E.A.R. The court may require an updated predisposition report, and the parties should be permitted to present new evidence and argument. See C.H. v. State, 4 So.3d 794 (Fla. 4th DCA 2009).

Reversed and remanded for a new disposition hearing.

GROSS and CONNER, JJ., concur.

. We can find no basis for this finding in the record.