DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**D.R.,** a Child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-3254

[October 21, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Moses Baker, Judge; L.T. Case No. 502013CJ003679A.

Antony P. Ryan, Regional Counsel and Louis G. Carres, Special Assistant Conflict Counsel of Office of Criminal Conflict and Civil Regional Counsel, Fourth District, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

We revisit *E.A.R. v. State*, 4 So. 3d 614 (Fla. 2009), and its proper application in juvenile dispositions in this appeal. A juvenile appeals his commitment to a low risk program after being adjudicated guilty of grand theft. He argues the trial court failed to properly follow *E.A.R.* We disagree and affirm.

After finding the juvenile guilty as charged, the trial court requested a comprehensive evaluation, staffing, and predisposition report. In light of *E.A.R.*, the court requested the Department of Juvenile Justice ("DJJ") to advise "as to an appropriate restrictiveness level should the Court decide that commitment as opposed to probation would be in order."

In the predisposition report, the DJJ recommended the juvenile be placed on probation due to the serious nature of the offense, and its belief that he would benefit from structured supervision and services in the home. However, because the court ordered the DJJ "to provide a recommendation . . . as to the restrictiveness level appropriate to meet the

child's needs," it alternatively recommended a low risk commitment program.

The trial court held the disposition hearing over three days. At the last hearing, the State argued that the DJJ had attempted to modify the juvenile's conduct numerous times through diversion and probation to no avail. It detailed his delinquency history. It argued the juvenile was "not amenable to probation," and asked for commitment to the DJJ. Defense counsel explained the juvenile had been on probation for the last nine months without reoffending, and requested probation.

The trial court found:

> [I]n this instance it is absolutely clear that probation services in the community are no longer warranted. All of those things have been tried and they have failed.
>
> It is too very telling that these are some very serious offenses. Robberies, Grand Theft, Batteries on School Board Employees, things of that nature. The State clearly articulated the reasons why probation has failed. I don't believe that you missed any of the facts that I observed.
>
> The only thing that might be mitigating is that although he does have some problems in school, he did attend summer school and he was promoted.
>
> But for the reasons articulated in the Pre-Disposition Report, the Comprehensive Evaluation, the testimony before me, probation is no longer appropriate. It has been tried and unfortunately it has failed.
>
> So therefore we must now go to the 2nd step. And the 2nd step is the appropriate restrictiveness level.

The State concurred with the recommendation for non-secure residential commitment; defense counsel did not respond.

The trial court then found, "[b]ased upon the evaluation of the [DJJ] and the [*E.A.R.*] Supreme Court decision no further legal analysis is required because I am accepting the evaluation of the [DJJ]. . . . At this point the [c]ourt will commit him to a non-secure residential commitment level." The court found under section 985.433(7)(a), Florida Statutes, and consistent with the alternative recommendation, that the juvenile's needs

2

could be met in a non-secure residential commitment program. The court entered a written commitment order. From this disposition order, the juvenile now appeals.

He argues the court erred in rejecting the DJJ's probation recommendation and ordering a residential commitment program without engaging in an *E.A.R.* analysis. He suggests that our decisions require such an analysis under these circumstances. The State responds that the court properly followed the DJJ's recommendation and committed the juvenile to a non-secure residential program. It argues *E.A.R.* does not apply to the court's initial decision to adjudicate and commit a juvenile; it applies only when the court departs from the recommended restrictiveness level of commitment.

"A trial court's departure from the DJJ recommendation is reviewed for abuse of discretion. However, whether a juvenile court has employed the proper legal standard in providing its departure reasons is a question of law subject to de novo review." *D.R.R. v. State*, 94 So. 3d 680, 681 (Fla. 4th DCA 2012) (internal citation omitted).

The issues for our consideration are: (1) whether *E.A.R.* applies to the court's initial decision to adjudicate and commit a juvenile; and (2) whether *E.A.R.* findings are required when a court imposes an alternative recommendation to commit the juvenile at the DJJ's recommended restrictiveness level. We have not had the opportunity to address these issues in our prior opinions.

Section 985.433, Florida Statutes (2014), governs "[d]isposition hearings in delinquency cases." § 985.433, Fla. Stat. Subsection (6) provides "[t]he first determination to be made by the court is a determination of the suitability or nonsuitability for adjudication and commitment of the child to the [DJJ]. This determination shall include consideration of the recommendations of the [DJJ], which may include a predisposition report." *Id.* § 985.433(6). Subsection (7) then requires the determination to be in writing or on the hearing record and include specific findings for the reasons the court chose commitment. *Id.* § 985.433(7).

In making a determination, "[t]he [DJJ] shall recommend to the court the most appropriate placement and treatment plan, specifically identifying the restrictiveness level most appropriate for the child if commitment is recommended." *Id.* § 985.433(7)(a).

> The court shall commit the child to the [DJJ] at the restrictiveness level identified or may order placement at a

3

different restrictiveness level. The court shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the [DJJ].

*Id.* § 985.433(7)(b).

In *E.A.R.*, our supreme court stated, "[t]he precise issue . . . is whether chapter 985, Florida Statutes (2007), requires juvenile courts to justify departures from the [DJJ's] recommended dispositions by explaining a judge's 'reasons' for a departure in terms of the characteristics of the *imposed restrictiveness level* vis-à-vis the rehabilitative needs of the child." *Id.* at 616–17 (emphasis added) (footnotes omitted). "[O]nce the DJJ has identified the restrictiveness level—and thereby the commitment facilities—that are most appropriate in terms of the child's individual rehabilitative needs . . . it would defeat the legislative scheme of chapter 985 to allow the juvenile court to depart . . . for just any 'reason . . . .'" *Id.* at 618.

Since *E.A.R.*, we have routinely reversed dispositions when a court orders commitment at a restrictiveness level different from that recommended by the DJJ without making the requisite findings. *See, e.g.*, *B.N. v. State*, 39 So. 3d 515 (Fla. 4th DCA 2010) (reversing commitment to a moderate risk program where the DJJ recommended probation); *S.B. v. State*, 16 So. 3d 256 (Fla. 4th DCA 2009) (reversing commitment to a moderate risk program contrary to the DJJ's probation recommendation); *E.E. v. State*, 7 So. 3d 1140 (Fla. 4th DCA 2009) (reversing commitment to a moderate risk program over the DJJ's recommendation of probation due to insufficient findings under *E.A.R.*). But, in each of these cases, the DJJ neither made an alternative commitment nor a restrictiveness level recommendation.

More recently, the First and Second District Courts of Appeal have held that *E.A.R.* applies only to the restrictiveness level of commitment after the court initially determines whether to commit the juvenile. *D.G. v. State*, 170 So. 3d 1 (Fla. 2d DCA 2015); *J.B.S. v. State*, 90 So. 3d 961 (Fla. 1st DCA 2012). Their approach is completely consistent with *E.A.R.*

In *J.B.S.*, the DJJ predisposition report recommended probation, but the court committed the juvenile, and asked the DJJ for a restrictiveness level recommendation. *Id.* at 962–63. The court then followed the DJJ's restrictiveness recommendation of a moderate risk facility. *Id.* at 964. The juvenile appealed arguing that the court erred in not applying *E.A.R.* in its initial determination to commit the juvenile over the DJJ's

recommendation of probation.

The First District held:

> After reviewing the statutes and the express language of
> *E.A.R.*, we agree with the trial court that *E.A.R.* does not apply
> to the initial determination made under section 985.433(6),
> which gives the trial court wide discretion in determining the
> suitability of commitment of the child to the [DJJ]. *E.A.R.*
> addressed the "precise issue" of the meaning to be accorded
> subsection (7)(b) of section 985.433. The requirements of
> subsection (7)(b) do not come into play here, because the trial
> court did not depart from the restrictiveness level
> recommended by DJJ. Specifically, the trial court considered
> the PDR, ordered a further multidisciplinary assessment and,
> after receiving the recommendation from DJJ as to a
> restrictiveness level, followed that recommendation.

*Id.* at 967.

In *B.K.A. v. State,* 122 So. 3d 928 (Fla. 1st DCA 2013), the First District
further explained:

> *Probation is not a restrictiveness level because it is a limitation
> on the freedom of the child "in lieu of commitment to the custody
> of the department."* § 985.03(44), Fla. Stat. In contrast,
> "restrictiveness level" is defined as the level of "programming
> and security provided by programs that service . . . committed
> children." § 985.03(46), Fla. Stat. *"Restrictiveness level"
> refers to "levels of commitment," and probation is not included
> in the list of these levels.* § 985.03(46)(a)–(e), Fla. Stat. (lowest
> restrictiveness level is "minimal risk non-residential,"
> applicable to committed youth who remain in the community).

*Id.* (alteration in original) (emphasis added).

The Second District joined the First District in bifurcating the
disposition process and applying *E.A.R.* only to the second step in the
process. *D.G.,* 170 So. 3d at 1–6. There, the DJJ recommended probation.
*Id.* at 2. However, the court committed the juvenile to a high-risk sex
offender program, without obtaining a restrictiveness level
recommendation from the DJJ or making findings consistent with *E.A.R.*
*Id.* The Second District found no error in the court's choice of commitment
over probation. *Id.* at 3.

The Second District noted that the "court was obliged in the second step of the disposition process to determine the appropriate restrictiveness level of the commitment." *Id.* "The Florida Supreme Court's decision in [*E.A.R.*] involved this second step and, specifically, the type of reasons that would warrant a court's disregard of DJJ's recommended commitment level." *Id.* It reversed because the court "imposed a high-risk restrictiveness level without first obtaining the DJJ's recommendation." *Id.* at 4, 6.

We now join the First and Second District Courts of Appeal in holding that *E.A.R.* findings are unnecessary for the court's initial decision of whether to commit a juvenile even where the DJJ recommends probation. Those requirements apply only to the second step of the disposition process when a court departs from the recommended restrictiveness level of the commitment.

Here, the court requested a predisposition report from the DJJ, and specifically asked for a restrictiveness level recommendation if the court chose to commit the juvenile.[1] The DJJ recommended probation, but also included a restrictiveness level recommendation of a non-secure residential program. Once the court chose to commit the juvenile contrary to the initial DJJ probation recommendation, it articulated its findings in support of commitment. It then followed the DJJ's recommended restrictiveness level, eliminating the need to make *E.A.R.* findings.

*Affirmed.*

CIKLIN, C.J., and FORST, J., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***

---

[1] We are aware of *Department of Juvenile Justice v. State*, 151 So. 3d 561 (Fla. 1st DCA 2014), where the First District quashed an omnibus order requiring the DJJ to recommend a restrictiveness level in all of its predisposition reports. *Id.* at 561. "By contravening the statute, the circuit court judge violated the separation of powers doctrine and thereby acted in excess of his jurisdiction." *Id.* Neither party has cited this decision. We find the case distinguishable based upon its omnibus nature.