DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**C.C.,** a child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-3890

[June 19, 2019]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Curtis Lee Disque, Judge; L.T. Case Nos. 432014CJ000222A, 432016CJ000121A, 432017CJ000185A and 432017CJ000234A.

Carey Haughwout, Public Defender, and Virginia Murphy, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Anesha Worthy, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

C.C. appeals his commitment to a high-risk residential program after the trial court departed from the disposition recommended by the Department of Juvenile Justice ("DJJ"). We agree with appellant's argument that the trial court failed to comply with *E.A.R. v. State*, 4 So. 3d 614 (Fla. 2009), in deviating from the DJJ's recommendation for a non-secure residential program. Accordingly, we reverse the disposition order and remand for a new disposition hearing.

In June 2015, appellant entered no contest pleas to burglary charges and was placed on probation. In March 2016, he admitted to violating his probation after getting new charges, but the trial court reinstated probation. In July 2016, appellant again admitted to allegations that he had violated his probation. After ordering a pre-disposition report and comprehensive evaluation, the trial court sentenced appellant to a non-secure residential facility with post-commitment probation to follow.

Less than a month after his release from the residential program, appellant was arrested in June 2017. Appellant entered an open plea of no contest to the charges and admitted to having violated his probation. The trial court set disposition for December 2017 and ordered a pre-disposition report, comprehensive evaluation, staffing, and placement level recommendation from the DJJ.

In its report, the DJJ recommended that appellant be placed in a non-secure commitment facility, explaining:

> During the staffing, JPO Baker provided a verbal overview of the youth's history with the Department and his current charges, services that [appellant] is currently receiving, and his criminogenic needs. It was noted that [appellant] was released from his commitment program less than seven months ago, and obtained new charges within 18 days of returning to the community. [Appellant] displayed a nonchalant attitude towards the Department's effort to aid him in rehabilitation and turning around his life. This was evident due to the number of services he has been referred to, with continued anti-social behaviors. [Appellant] offered no argument in his own defense, as to why he feels as though he should continue on Post-Commitment Probation. He was unable to offer an explanation for his behaviors or a plan on how he would not recidivate.

> In conclusion of the Multidisciplinary Staffing, the Department of Juvenile Justice came to the recommendation of Non-Secure Residential Commitment. According to the PACT Tool, the youth scores HIGH risk to re-offend. The current charge is a minor offense, and in accordance to the Dispositional Matrix, the risk level and manner of offense criteria is in the range of a Level 3a-c (Probation, Probation Enhancement Services or Day Treatment) or Level 4 (Non-secure Residential Commitment) recommendation. Due to [appellant's] current criminogenic needs, it was determined that a Level 4 (Non-secure Residential Commitment) recommendation was appropriate.

> The youth's criminal history, social history, attitudes, and behaviors were taken into consideration. "Per F.S 985.435(4) The Department respectfully recommends the court authorize the use of the Effective Response Matrix (ERM) as an alternative consequences component to address youth

noncompliance with technical conditions of probation."

The comprehensive evaluation, referred to by the DJJ in its report, concluded that appellant had "significant antisocial behaviors, the inability to adhere to the criteria set forth in his probation agreement, anger management problems, Cannabis Abuse issues, and a history of sexual abuse."

At the disposition hearing, appellant's mother asked the trial court to allow him to remain on probation, noting that he was helping around the house and had stayed out of trouble, except for referrals for minor incidents at school. Appellant's clinical therapist added that appellant was making satisfactory progress and would complete his eighteen-week program in just three weeks.

Appellant's juvenile probation officer testified that although the DJJ recommended a non-secure placement, she recommended a high-risk program because appellant had recently been released from a non-secure program when he picked up the new charges, which demonstrated that he was still committing crimes and failing to adhere to the terms of his probation. The court asked the probation officer whether appellant would be receiving essentially the same services if he were to be placed in another, albeit different, non-secure program. The probation officer noted that each program had its quirks and may offer different services, but she responded affirmatively. When the court asked why the DJJ would make the same recommendation after appellant picked up new charges following his release from a non-secure program, the probation officer explained, "According to the dispositional matrix, [appellant] is a high risk to re-offend with minor offenses. And he falls between the levels of 3A through C and level 4. And level 4 is a non-secure."

The State requested that the court place appellant in a high-risk program, noting, among other things, that appellant had committed new crimes shortly after being released from the non-secure program.

After the hearing, the trial court adjudicated appellant delinquent, deviated from the DJJ pre-disposition report recommendation, and ordered that appellant be committed to a level eight high-risk program. The court reduced to writing its reasons for deviating from the DJJ's recommendation, noting, *inter alia*, that based on appellant's numerous contacts with the justice system and violations of probation, even after completing a non-secure program, it was in the best interest of appellant and the community to deviate upward.

3

On appeal, we find merit in appellant's argument that the trial court's deviation failed to comply with *E.A.R.*, because the court failed to provide any new reasons for its departure but instead relied solely on facts from the pre-disposition report that had already been considered at the staffing. We therefore need not reach his remaining arguments.

We review the trial court's departure from the DJJ recommendation for an abuse of discretion. *D.R. v. State*, 178 So. 3d 478, 480 (Fla. 4th DCA 2015). However, the question of whether the court has used the proper legal standard to provide its departure reasons is a question of law that is reviewed de novo. *Id.*

In *D.R.*, we joined our sister courts in holding that "*E.A.R.* findings are unnecessary for the court's initial decision of *whether* to commit a juvenile even where the DJJ recommends probation." *Id.* at 482 (emphasis added). We added that such findings "apply only to the second step of the disposition process when a court departs from the recommended restrictiveness level of the commitment." *Id.*

To satisfy the requirements of *E.A.R.*, a trial court must do the following to justify a commitment disposition that departs from the DJJ's recommendation:

> (1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels *including* (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential "lengths of stay" associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and
>
> (2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile—in the least restrictive setting—and maintaining the ability of the State to protect the public from further acts of delinquency.

*E.A.R.*, 4 So. 3d at 638. This requires the trial court to do more than "[s]imply listing 'reasons' that are totally unconnected to this analysis," because that "does *not* explain why one restrictiveness level is better suited for providing the juvenile offender with 'the *most appropriate* dispositional services in the *least restrictive* available setting.'" *Id.* at 633 (citations omitted). In addition, the trial court's stated reasons for departure must provide a legally sufficient basis for departure by "identifying significant

information that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child's programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public." *Id.* at 634.

Furthermore, it is well settled that under the constraints of *E.A.R.*, a trial court "may not deviate simply because it disagrees with the disposition recommended by DJJ," and "the trial court must do more than 'parrot' or 'regurgitate' the information in the PDR to support a departure disposition." *B.L.R. v. State*, 74 So. 3d 173, 176 (Fla. 1st DCA 2011) (citing *E.A.R.*, 4 So. 3d at 633, 636, 638).

In *B.L.R.*, the First District faced a set of facts similar to those in the case before us but reversed after finding that the trial court had "failed to articulate its understanding of the respective characteristics of the opposing restrictiveness levels and failed to explain based on these differing characteristics why a maximum-risk facility is better suited to [the juvenile's] rehabilitative needs and the safety of the public." *Id.* at 176. Similarly, we have reversed and remanded for a new disposition hearing after concluding that a trial court's explanation for deviation from the DJJ's recommendation expressed cogent reasons for why more severe punishment would better address the juvenile's behavior and protect the public, but the trial court's pronouncement failed to comply with the specific methodology required by *E.A.R. See D.R.R. v. State*, 94 So. 3d 680, 682–83 (Fla. 4th DCA 2012).

Here, although the trial court gave sound reasons for deviating from DJJ's recommendation, it failed to satisfy the two-pronged analysis set out in *E.A.R.* First, the trial court failed to articulate its understanding of the opposing restrictiveness levels. The court did not engage in any discussion about the type of juvenile offenders who are more suited for non-secure programs than high-risk programs, the possible length of stay for a non-secure program versus a high-risk program, or the treatment programs and services available at a non-secure program rather than at a high-risk program. Instead, the court merely restated the standard for the first prong in the *E.A.R.* analysis and asserted that it was articulating its understanding of the standard. Second, the trial court's stated reasons did not contain significant information that the DJJ overlooked, failed to sufficiently consider, or misconstrued regarding appellant's programmatic, rehabilitative needs, along with the risks that appellant posed to the public. Instead, the trial court relied on factors the DJJ had considered before making its recommendation. For example, the court focused on appellant's commission of new offenses shortly after being released from his non-secure program. The probation officer and others,

however, had raised this argument at the staffing, and the DJJ had considered it, along with the fact that appellant had a high risk of reoffending and the new offenses appellant committed were relatively minor, before making its recommendation for a non-secure placement.

In sum, the trial court's oral pronouncement in this case lacked independent support for its deviation, and its order memorializing the reasons for departure also failed to provide significant information that the DJJ overlooked. Accordingly, we reverse appellant's disposition and remand for a new disposition hearing with an updated pre-disposition report and the presentation of any new evidence and arguments by the parties. *See D.R.R.*, 94 So. 3d at 683. On remand, the trial court may amend the disposition order to include findings required by *E.A.R.* to support a high-risk commitment placement, or, if the court cannot make such findings, then the court must enter an order committing appellant to a non-secure program as the DJJ recommended. *See B.L.R.*, 74 So. 3d at 177.

*Reversed and Remanded for new disposition hearing.*

LEVINE, J., and ROWE, CYMONIE, Associate Judge, concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**