DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**F.L.P,** a child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

Nos. 4D19-362 & 4D19-697

[March 25, 2020]

Consolidated appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Luis Delgado, Judge; L.T. Case Nos. 16CJ001925ASB, 17CJ000922ASB, 17CJ001243ASB, 17CJ002014ASB, 17CJ002015ASB, 17CJ002017ASB, 17CJ002019ASB, 17CJ002107ASB and 17CJ002109ASB.

Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.

KLINGENSMITH, J.

F.L.P., a juvenile, appeals a final order adjudicating him delinquent and committing him to a non-secure facility. Appellant argues that the trial court failed to meet the requirements of *E.A.R. v. State*, 4 So. 3d 614 (Fla. 2009), by departing from the DJJ's probation recommendation, and alternatively, failing to order a predisposition report ("PDR") with a commitment recommendation. We agree the trial court failed to meet *E.A.R.*'s requirements and reverse.

Appellant pled guilty to multiple counts of burglary and theft as a minor and was sentenced to a probationary term. After Appellant allegedly violated his probation, DJJ recommended he remain on probation and furnished a PDR that contained a probation recommendation but no alternative commitment recommendation. The State disagreed with the DJJ's probation recommendation and advocated for commitment.

At the hearing, the following exchange took place:

> THE COURT: [Appellant], you're trying, I don't want to take that away from you, but based on everything I've heard today, I do believe commitment is appropriate. As far as the recommendation of [the DJJ], for restrictiveness level?
>
> DJJ: Unsecure.
>
> THE COURT: State.
>
> THE STATE: Secure.
>
> THE COURT: You're asking for a high?
>
> THE STATE: Yes.
>
> THE COURT: Defense?
>
> DEFENSE COUNSEL: If the Court is not inclined to place the child back on probation the most appropriate would be non-secure.

The trial court then ordered Appellant committed to a non-secured facility. This appeal followed.

"We review the trial court's departure from the DJJ recommendation for an abuse of discretion. However, the question of whether the court has used the proper legal standard to provide its departure reasons is a question of law that is reviewed de novo." *C.C. v. State*, 276 So. 3d 14, 17 (Fla. 4th DCA 2019) (citation omitted).

Section 985.433, Florida Statutes (2018), delineates the procedural requirements a trial court's disposition decision must meet after a juvenile has been adjudicated delinquent. Subsection 7(b) of that statute provides in pertinent part:

> The court shall commit the child to the [DJJ] at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the [DJJ].

2

§ 985.433(7)(b), Fla. Stat. (2018).

The Florida Supreme Court applied this statutory mandate in *E.A.R.*, announcing "a new, more rigorous analysis that a trial court must conduct before departing from the DJJ's recommendation." *C.M.H. v. State*, 25 So. 3d 678, 679 (Fla. 1st DCA 2010). There, the Court held that the trial court must take the following steps before lawfully departing from the DJJ's recommendation:

> (1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels . . . *including* (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential "lengths of stay" associated with each level, and the divergent treatment programs and services available to the juvenile at these levels . . . and

> (2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile—in the least restrictive setting—and maintaining the ability of the State to protect the public from further acts of delinquency.

*E.A.R.*, 4 So. 3d at 633. The trial court's stated "reasons" for departing from the DJJ's recommendation "must provide a legally sufficient foundation for 'disregarding' the DJJ's professional assessment and PDR by identifying significant information that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child's programmatic, rehabilitative needs[,] along with the risks that the unrehabilitated child poses to the public." *Id.* at 634.

However, "*E.A.R.* findings are unnecessary for the court's initial decision of whether to commit a juvenile even where the DJJ recommends probation. Those requirements apply only to the second step of the disposition process when a court departs from the recommended restrictiveness level of the commitment." *D.R. v. State*, 178 So. 3d 478, 482 (Fla. 4th DCA 2015). The trial court errs if the DJJ only recommends probation and it commits the juvenile without requesting a DJJ restrictiveness recommendation for the commitment. *See D.A.H. v. State*, 212 So. 3d 399, 399 (Fla. 4th DCA 2017).

In *B.K.A. v. State*, 122 So. 3d 928, 929 (Fla. 1st DCA 2013), the DJJ provided a PDR that recommended probation and did not provide an alternate commitment recommendation. The trial court determined the

3

juvenile should be committed to a low-risk residential program. *Id.* The First District reversed, holding that the trial court erred by not complying with the second step of *E.A.R.*:

> The trial court's error was in ordering a level of commitment without requesting a further multidisciplinary assessment and follow-up predisposition report . . . Once the trial court receives a recommendation from the [DJJ] of the "most appropriate placement and treatment plan, specifically identifying the restrictiveness level most appropriate for the child," as required by section 985.433(7)(a), the court may proceed with step two of the disposition in these cases in terms of the level of commitment of the child. A recommendation of "probation" by DJJ, *without any alternative analysis and recommendation* in the event the court determines that the child should be adjudicated delinquent and committed to the Department, is insufficient to allow the juvenile court to proceed with a final commitment disposition under section 985.433(7), Florida Statutes.

*Id.* at 930-31 (citation omitted) (emphasis added).

In this case, the trial court erred by not requesting that the DJJ submit an additional PDR to determine the restrictiveness level for Appellant's commitment. *See C.C.*, 276 So. 3d at 17. Here, the PDR did not provide an alternate commitment recommendation, so the trial court did not have the benefit of a multidisciplinary assessment and DJJ recommendation to determine the appropriate level of commitment for Appellant. *See B.K.A.*, 122 So. 3d at 929. The DJJ representative's one-worded recommendation at the disposition hearing did not provide sufficient DJJ input for the trial court to comply with the second step of *E.A.R. See id.*; *see also D.A.H.*, 212 So. 3d at 399 (finding that the trial court must request a restrictiveness level recommendation from DJJ prior to ordering commitment if DJJ did not provide one).

Additionally, the trial court failed to articulate on the record an understanding of the respective characteristics of the restrictiveness levels under consideration. *See E.A.R.*, 4 So. 3d at 638. Here, the trial court did not explain why the non-secure level was better suited to serving Appellant's rehabilitative needs, nor did the court explain how such a commitment would maintain the ability of the State to protect the public from further acts of delinquency. *See id.* (identifying these two inquiries as prerequisites to departing from a DJJ recommendation); *see also C.M.H.*, 25 So. 3d at 680 (same).

4

For these reasons, the trial court's disposition order did not comply with the dictates of *E.A.R.* We reverse and remand to provide the trial court an opportunity to conduct a new disposition hearing and to enter a disposition order in accord with this opinion.

*Reversed and remanded.*

WARNER and KUNTZ, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***