PER CURIAM.
C.C.T., a juvenile, appeals a final order adjudicating him delinquent and committing him to a high-risk facility. C.C.T. argues, and the State concedes, that in departing from the recommendation of the Department of Juvenile Justice (“DJJ”) to commit him to a moderate-risk facility, the trial court failed to comply with the “highly specific”[1] requirements enunciated in E.A.R. v. State, 4 So.3d 614 (Fla.2009). We agree and, consequently, reverse.
Section 985.433(7)(b), Florida Statutes (2010), delineates the' requirements governing a trial court’s disposition decision after a juvenile has been adjudicated delinquent. This subsection provides in pertinent part as follows:
The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department.
§ 985.433(7)(b). In reference to this statutory mandate, the Florida Supreme Court announced in E.A.R. v. State, 4 So.3d 614, 638-39 (Fla.2009), “a new, more rigorous analysis that a trial court must conduct before departing from the DJJ’s recommendation.” C.M.H. v. State, 25 So.3d 678, 679 (Fla. 1st DCA 2010). Specifically, E.A.R. instructs that to lawfully depart from the recommendation of the DJJ, the trial court must take the following steps:
(1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) the type of child that each
*1151 restrictiveness level is designed to serve, the potential “lengths of stay” associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and
(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile-in the least restrictive setting-and maintaining the ability of the State to protect the public from further acts of delinquency.
E.A.R., 4 So.3d at 638. The trial court’s stated “reasons” for departing from the DJJ’s recommendation “must provide a legally sufficient foundation for ‘disregarding’ the DJJ’s professional assessment and PDR by identifying significant information that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child’s programmatic, rehabilitative needs[,] along with the risks that the unrehabilitated child poses to the public.” Id.
In this case, the trial court failed to (1) articulate an understanding of the respective characteristics of the high-risk and moderate-risk restrictiveness levels and to (2) logically and persuasively explain why the high-risk level was better suited to serving C.C.T.’s rehabilitative needs in the least restrictive setting and to maintaining the ability of the State to protect the public from further acts of delinquency. E.A.R., 4 So.3d at 638 (identifying these two inquiries as prerequisites to departing from the recommendation of the DJJ); see also 25 So.3d at 680 (also reaching this conclusion). For these reasons, we hold that the State appropriately conceded that the trial court’s order did not comply with the dictates of E.A.R. Accordingly, we reverse and remand to provide the trial court an opportunity to enter an order in compliance with E.A.R.; however, if no such order can be entered, we direct the trial court to impose the recommendation of the DJJ. C.M.H., 25 So.3d at 680 (identifying this form of relief where the trial court “did not engage in the appropriate analysis” prescribed by E.A.R. when it departed from the DJJ’s recommendation).
REVERSED and REMANDED.
VAN NORTWICK, LEWIS, and ROBERTS, JJ., concur.

. T.M. v. State, 48 So.3d 1007, 1009 (Fla. 1st DCA 2010).