PER CURIAM.
Appellant, a juvenile, seeks review of a delinquency disposition order committing him to a maximum-risk facility. He contends that the trial court failed to comply with E.A.R v. State, 4 So.3d 614 (Fla.2009), in deviating from the recommendation of the Department of Juvenile Justice (DJJ) that he be committed to a high-risk facility. We agree and reverse.
While on post-commitment probation, Appellant was arrested for carrying a concealed firearm, possession of a weapon on school grounds, resisting an officer without *175 violence, and possession of a firearm by a convicted delinquent. Appellant was charged with violating his probation based on these offenses. Appellant admitted the violation and the trial court ordered a predisposition report (PDR). The PDR recounted Appellant’s prior offenses and his commitment history, which included terms of probation and commitments to medium-risk and high-risk facilities. The PDR recommended that Appellant be committed to a high-risk facility based on the “seriousness” of his new offenses and his “lack of effort to abide by probation requirements.”
At the disposition hearing, the State argued that the Appellant should be committed to a maximum-risk facility based on his prior commitment history. The State pointed out that Appellant’s new offenses were even more serious than his prior offenses and that the new offenses were committed shortly after his release from a high-risk facility and while he was still on post-commitment probation. Appellant argued that the trial court should follow DJJ’s recommendation and commit him to a high-risk facility.
The trial court committed Appellant to a maximum-risk facility. The court explained its decision as follows:
[Appellant], what scares the heck out of me is why you perceive you had a need to have a gun.
[[Image here]]
I don’t know I’ve tried through dependency to reach through to you. I’ve tried through delinquency to reach through to you and I you know, we go back a long ways.
I just don’t — you know, my job is to try to decide and figure out what’s in your best interest, as well as the best interest of society.
I just keep coming back to the conclusion that you pose a severe danger to yourself, and anything less than a maximum risk is going to be sending you the wrong message because if you continue along the path that you’re continuing on, you’re going to be spending a lifetime behind bars, so. Well, may disagree with me, but I just don’t — in analyzing the information and knowing your background and knowing that high risk and moderate risk hasn’t worked and that is the only tool left in the arsenal, short of putting you in the adtdt system, I don’t see any rational argument that supports anything less than a maximum risk, (emphasis added).
We review the trial court’s disposition order for an abuse of discretion; but, whether the trial court exercised appropriate discretion in imposing a departure disposition depends on 1) whether the trial court employed the proper legal standard as set forth in E.A.R., and 2) whether the court’s departure reasons are supported by the evidence. See E.A.R., 4 So.3d at 638-39. Whether the trial court employed the proper legal standard is an issue of law subject to de novo review. See generally Collett v. State, 28 So.3d 224, 226 (Fla. 2d DCA 2010).
In E.A.R., the Florida Supreme Court “announced a new, more rigorous analysis in which a trial court must engage before departing from DJJ’s recommendation.” M.J.S. v. State, 6 So.3d 1268, 1269 (Fla. 1st DCA 2009). The court explained:
The only rational or logical means through which the juvenile court may provide ‘reasons’ that explain, support, and justify why one restrictiveness level is more appropriate than another — and thereby rationalize a departure disposition — is for the court to:
(1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) the type of child that each *176 restrictiveness level is designed to serve, the potential “lengths of stay” associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and
(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile-in the least restrictive setting-and maintaining the ability of the State to protect the public from further acts of delinquency.
E.A.R., 4 So.3d at 638. Under this standard, the trial court may not deviate simply because it disagrees with the disposition recommended by DJJ. Id. at 636 (quoting N.B. v. State, 911 So.2d 833, 835-36 (Fla. 1st DCA 2005)). Likewise, the trial court must do more than “parrot” or “regurgitate” the information in the PDR to support a departure disposition, id. at 633, 638; rather, the court must
provide a legally sufficient foundation for ‘disregarding1 the DJJ’s professional assessment and PDR by identifying significant information that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child’s programmatic rehabilitative needs along with the risk that the unre-habilitated child poses to the public.
Id. at 638; see also C.A.D. v. State, 18 So.3d 672, 674-75 (Fla. 1st DCA 2009) (affirming departure disposition where the trial court based its disposition on matters not addressed in the PDR).
Here, in committing Appellant to a maximum-risk facility, the trial court focused on the fact that less restrictive options had been unsuccessful in protecting the public from Appellant’s continued delinquency. This finding is supported by the evidence, namely the fact that Appellant committed new, more serious offenses within four months after his release from a high-risk facility. The PDR did not address this issue; it simply recounted Appellant’s prior offenses and his commitment history. And although the PDR observed that Appellant was not amenable to probation, it offered no explanation why again committing Appellant to a high-risk facility would serve Appellant or protect the public. Thus, the trial court had a legally sufficient basis to deviate from the disposition recommended by DJJ.
 Nevertheless, we are compelled by E.A.R. to reverse because, in explaining its rationale for deviating from the disposition recommendation, the trial court failed to articulate its understanding of the respective characteristics of the opposing restrictiveness levels and failed to explain based on these differing characteristics why a maximum-risk facility is better suited to Appellant’s rehabilitative needs and the safety of the public.* Although “a trial court, working routinely with juveniles, may have insight into the types of *177 programs provided at certain juvenile detention facilities, E.A.R. requires a trial court place that knowledge on record if the judge intends to rely on these types of findings to support deviations.” M.H. v. State, 69 So.3d 325, 328 (Fla. 1st DCA 2011). We see nothing in E.A.R. that would relieve the trial court of this obligation where the deviation is based primarily on a need to protect the public, rather than the juvenile’s need for a specific program (e.g., drug treatment). In either situation, the findings are necessary for this court to provide meaningful review of the disposition order. See E.A.R., 4 So.3d at 639 (citing Kent v. United States, 383 U.S. 541, 561, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) for the proposition that: “Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions.”).
In sum, for the reasons stated above, we reverse the disposition order and remand for resentencing. On remand, the trial court shall either amend the disposition order to include findings required by E.A.R to support the maximum-risk commitment or, if such findings cannot be made, enter a new order committing Appellant to a high-risk facility as recommended by DJJ. See C.C.T. v. State, 53 So.3d 1149 (Fla. 1st DCA 2011); C.M.H. v. State, 25 So.3d 678 (Fla. 1st DCA 2010).
REVERSED and REMANDED with directions.
LEWIS and WETHERELL, JJ., concur; WOLF, J., dissenting.

 The requisite findings cannot be inferred from the statutory definitions of high-risk and maximum-risk because there appear to be more similarities than differences in the security of these restrictiveness levels. Both levels do not allow the juvenile to have access to the community, both are intended for juveniles who require close supervision because of concerns for public safety, and both types of facilities are "hardware-secure with perimeter fencing and locking doors” and "provide 24-hour awake supervision, custody, care, and treatment of residents.” Compare § 984.03(45)(d), Fla. Stat. (definition of “high-risk residential”) with § 984.03(45)(e), Fla. Stat. (definition of "maximum-risk residential”). Moreover, there is no indication in the record that a high-risk facility would not adequately protect the public from Appellant (for example, that he has previously escaped from such a facility) or that there is something about a maximum-risk facility that will better serve Appellant's need to change his ways.