IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

M.J., A CHILD,

     Appellant,

v.

STATE OF FLORIDA,

     Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

CASE NOS. 1D16-2613, 1D16-2615, 1D16-2616, 1D16-2617 &1D16-2618

_____/

Opinion filed March 10, 2017.

An appeal from the Circuit Court for Duval County.
Henry E. Davis, Judge.

Andy Thomas, Public Defender; Archie F. Gardner, Jr., Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General; Trisha Meggs Pate and Heather Flanagan Ross, Assistant Attorneys General, Tallahassee, for Appellee.

PER CURIAM.

In these consolidated cases, the juvenile appellant, M.J., argues that the trial court reversibly erred in deviating from the Department of Juvenile Justice's recommendation without complying with the requirements of E.A.R. v. State, 4 So. 3d 614 (Fla. 2009). We agree and reverse.

In November 2015, after admitting to a violation of probation in four prior cases, M.J.'s probation was continued with a special condition that he successfully complete the AMI program. In March 2016, M.J. admitted to violating probation again, this time by not attending AMI. Upon the trial court's directive, the Department prepared a pre-disposition report (PDR), which found M.J. was a "high risk" to reoffend, but stated the Department's belief that M.J. had not had the proper services in place to facilitate his successful completion of probation. The Department continued to recommend probation as the least restrictive setting necessary to ensure public safety. The PDR further provided, "But in compliance with the Court's expressed intention to commit the youth, and its demand for a restrictiveness level, the Department would offer minimum-risk as the most appropriate commitment alternative."

At the disposition hearing, the State objected, arguing that M.J. had already violated probation for not attending AMI, rendering the Department's recommendations futile. The State requested that M.J. be committed to a nonsecure residential level facility. See § 985.03(44), Fla. Stat. (2016) (defining the four restrictiveness levels of juvenile commitment). During the hearing, the trial court heard from M.J.'s probation officer that she had no reason to believe he would comply with probation and also heard that M.J. had not attended AMI because he was fearful of some people in the program.

The trial court found that probation was not appropriate. The trial court also found commitment to AMI was not appropriate based upon M.J.'s articulated fear. The trial court announced it would deviate from the Department's recommendation, adjudicated M.J. delinquent in each case, and committed him to the Department under concurrent nonsecure residential placements. The State attempted to bolster the trial court's ruling by stating for the record that the deviation was valid because the Department did not take into consideration the welfare of the community and the welfare of the child. The trial court agreed with this statement, and again stated that probation was "simply not an option" for M.J. and there was no reason to believe he was going to comply with the probation. The trial court did not enter a written order.

On appeal, M.J. argues that the trial court improperly deviated from the Department's recommendation solely based on its disagreement and, in so doing, failed to comply with the requirements of E.A.R. This Court reviews the trial court's decision for an abuse of discretion. See B.L.R. v. State, 74 So. 3d 173, 175 (Fla. 1st DCA 2011). Whether the trial court exercised appropriate discretion depends on "(1) whether the trial court employed the proper legal standard as set forth in E.A.R. and (2) whether the court's departure reasons are supported by the evidence." Id. (citing E.A.R., 4 So. 3d at 638-39). Whether the trial court employed the proper legal standard is reviewed *de novo*. Id.

Section 985.433, Florida Statutes (2016), governs the disposition hearing in delinquency proceedings. Under subsection (6), the first determination to be made is "the suitability or nonsuitability for adjudication and commitment of the child to the [D]epartment." § 985.433(6), Fla. Stat. (2016). This Court has recognized that subsection (6) gives wide discretion to the trial court in determining whether to commit a child to the Department and that the rigorous analysis in E.A.R. does not apply to this initial determination. J.B.S. v. State, 90 So. 3d 961, 967 (Fla. 1st DCA 2012) (holding the E.A.R. analysis did not apply to the trial court's initial determination made under section 985.433(6) to reject the Department's recommendation of probation in favor of commitment); B.K.A. v. State, 122 So. 3d 928, 930 (Fla. 1st DCA 2013) ("Probation is **not** a restrictiveness level because it is a limitation on the freedom of the child 'in lieu of commitment to the custody of the [D]epartment.'") (citing § 985.03(44), Fla. Stat.) (emphasis in original). Here, the trial court apparently advised the Department in advance that it intended to commit M.J. and requested an alternative commitment recommendation. Cf. B.K.A. v. State, 122 So. 3d 928, 930 (Fla. 1st DCA 2013) (finding E.A.R. did not apply to the trial court's initial decision to reject probation in favor of commitment, but error occurred when the trial court committed the juvenile before obtaining the Department's recommendation as to the appropriate restrictiveness level); A.L.M. v. State, 176 So. 3d 1025 (Fla. 1st DCA 2015) (affirming the disposition order that adjudicated the

4

juvenile delinquent and found probation not appropriate, but reversing the trial court's nonsecure placement and remanding to first get a recommendation of a restrictiveness level from the Department before committing the juvenile).

The trial court's decision to deviate from the Department's minimum-risk commitment recommendation is what triggers the application of the E.A.R. in this case.  Under E.A.R., a trial court may not depart from the Department's recommendation merely because it disagrees; instead, it must provide reasons that are supported by a preponderance of the evidence.  4 So. 3d at 638.  The standards the trial court must meet are as follows:

> (1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels *including* (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential "lengths of stay" associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and

> (2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile-in the least restrictive setting-and maintaining the ability of the State to protect the public from further acts of delinquency.

Id. (emphasis in original).

The trial court's stated reasons must provide a "legally sufficient foundation" for departing from the Department's recommendation, which is accomplished "by identifying significant information that [the Department] has overlooked, failed to sufficiently consider, or misconstrued with regard to the child's programmatic,

rehabilitative needs along with the risks that the unrehabilitated child poses to the public." Id. These measures insure "fulfillment of the Legislature's comprehensive scheme and its stated intent that the juvenile courts of this state exercise appropriate discretion with the ultimate aim of providing the juvenile offender the most appropriate dispositional services in the least restrictive available setting." Id.

Here, the trial court did not articulate an understanding of the respective characteristics of the different restrictiveness levels as required under E.A.R. Nor did it explain why the nonsecure residential level was better suited to serving both M.J.'s rehabilitative needs – in the least restrictive setting – and maintaining the ability of the State to protect the public from further acts of delinquency than the Department's minimum-risk recommendation. While the trial court may have relied on its experience and personal knowledge to determine that a nonsecure residential program was more suitable, it did not provide a full reasoning and understanding on the record. Without such elucidation, this Court is not able to provide a meaningful review and determine whether the rigorous requirements of E.A.R. were complied with.

We agree with M.J. that this case is similar to B.L.R. in which the majority recognized that the trial court had a legally sufficient basis to deviate from the Department's recommendation, but held the trial court's failure to articulate its understanding of the restrictiveness levels and failure to explain why a maximum-

6

risk facility was better suited to the juvenile's needs and the safety of the public compelled reversal under E.A.R. 74 So. 3d at 176. Much like B.L.R., the trial court in this case did not articulate a sufficient basis for deviating from the Department's recommendation of minimum-risk commitment. We disagree with the State's argument that the trial court implicitly set out reasons for the deviation and relied on pieces of information that the Department overlooked. First, implicit reasoning does not satisfy the court's duty under E.A.R. as the trial court's reasoning must be placed on the record. See B.L.R., 74 So. 3d at 176-77. Second, the information identified by the State primarily relates to M.J.'s suitability for probation and not why a nonsecure residential placement was more suitable than the Department's minimum-risk recommendation. We also note the trial court's general agreement with the State's attempt to bolster its analysis for the record by using magic buzzwords does not meet the strict requirements under E.A.R. As stated by this Court in M.H. v. State,

> [I]t is important for trial courts to understand that deviating from a [Department] recommendation is a difficult matter pursuant to the dictates of E.A.R. In order to deviate lawfully, a trial court must do more than place generalized reasons on the record; it must engage in a well-reasoned and complete analysis of the PDR and the type of facility to which the trial court intends to send the child. This is no easy task and will take time and consideration.

69 So. 3d 325, 328 (Fla. 1st DCA 2011).

7

Accordingly, we reverse the trial court's dispositions and remand for resentencing with instructions to either enter a disposition order that includes the requisite E.A.R. findings or, if such findings cannot be made, enter an order committing M.J. to a minimum-risk facility as recommended by the Department. See B.L.R., 74 So. 3d at 177.

REVERSED and REMANDED.

ROBERTS, C.J., WOLF and B.L. THOMAS, JJ., CONCUR.