IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

T. S., A Child,

      Appellant,

v.

STATE OF FLORIDA,

      Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NOS. 1D17-0744, 1D17-0746, &
1D17-0748

**CORRECTED PAGES: pg 2,3**
**CORRECTION IS UNDERLINED IN RED**
**MAILED: October 10, 2017**
**BY: KR**

_____/

Opinion filed October 6, 2017.

An appeal from the Circuit Court for Duval County.
David C. Wiggins, Judge.

Andy Thomas, Public Defender, and Archie F. Gardner, Jr., Assistant Public
Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Heather Flanagan Ross, Assistant Attorney
General, Tallahassee, for Appellee.

WINOKUR, J.

In these consolidated cases, the juvenile appellant, T.S., argues that the trial

court reversibly erred in deviating from the Department of Juvenile Justice's

recommendation without complying with the requirements of *E.A.R. v. State*, 4 So. 3d 614 (Fla. 2009). We agree and reverse.

While on probation in two cases, T.S. was arrested and charged with grand theft auto, possession of cocaine, possession of cannabis, and driving without a valid driver's license. T.S. was also charged with violating probation based on these offenses. T.S. admitted violating probation and pled guilty to the new offenses. Upon the trial court's directive, the Department prepared a pre-disposition report ("PDR"). The PDR described T.S.'s criminal record and found that he was a "moderate-high risk" to reoffend, but stated that he was "not too far gone that he cannot be reached." The PDR recommended that T.S. be committed to a "minimum-risk" nonresidential program at the American Marine Institute in Jacksonville ("AMI").

At the disposition hearing, the State argued that T.S. should be committed to a nonsecure residential program, which, unlike AMI, would not permit him to live at home. The State pointed to the seriousness of T.S.'s offenses, his misbehavior in school, and his violations of probation. Counsel for T.S. argued that the trial court should accept the recommendation of the Department.

The trial court committed T.S. to a nonsecure residential program. The trial court explained its reasoning for departure as follows:

> At this time I don't think that – I'm going to not send him to Marine Institute and require a residential setting.

2

> And I'm doing this, ma'am, to help him. I am not doing this really to punish him. I don't think he is going to make it right now. And I'm looking at a little bit longer range.
>
> So I'm doing this hopefully to benefit him. Because I don't think his chances of success with his history are very promising at the Marine Institute.
>
> So I'm hoping that what I do will turn him and his behavior around, will get the drug treatment that he needs because I just don't think right now his judgment is good enough for me to count on him to get it outside of a residential setting.

The State asked if the trial court was deviating based on T.S. posing a danger to the community, and the trial court answered that <u>it</u> was.

Whether the trial court complied with the legal standard set forth in *E.A.R.* is reviewed de novo. *M.J. v. State*, 212 So. 3d 534, 536 (Fla. 1st DCA 2017). Under *E.A.R.*, a trial court may not depart from the Department's recommendation merely because it disagrees; instead, it must provide reasons that are supported by a preponderance of the evidence. 4 So. 3d at 638. The standards the trial court must meet are as follows:

> (1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels *including* (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential "lengths of stay" associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and

> (2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile-in the least restrictive setting-and maintaining the ability of the State to protect the public from further acts of delinquency.

3

*Id.* The trial court's stated reasons must provide a "legally sufficient foundation" for departing from the Department's recommendation, which is accomplished "by identifying significant information that [the Department] has overlooked, failed to sufficiently consider, or misconstrued with regard to the child's programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public." *Id.*

Here, the trial court gave nonspecific reasons in support of departure. The trial court did not articulate anything about the respective characteristics of the different restrictiveness levels as required under *E.A.R.* Nor did it explain why the nonsecure residential level was better suited to serving both T.S.'s rehabilitative needs—in the least restrictive setting—and maintaining the ability of the State to protect the public from further acts of delinquency than the Department's minimum-risk recommendation. While the trial court may have relied on its experience and personal knowledge to determine that a nonsecure residential program was more suitable, its reasoning on the record was insufficient under the rigorous requirements of *E.A.R.*

We are mindful of the seeming discrepancy between the text of section 985.433(7)(b), Florida Statutes, and the requirements of *E.A.R.* that Judge Makar identifies in his concurring opinion. Here, for example, although the trial court did not comply with *E.A.R.*, it stated that it doubted that T.S.'s "chances of success with

4

his history are very promising at the Marine Institute" and hoped that a more restrictive commitment might "turn him and his behavior around, [and] get the drug treatment that he needs because I just don't think right now his judgment is good enough for me to count on him to get it outside of a residential setting." But for *E.A.R.*, we would find that this reasoning is sufficient under the statute, and that the failure to specifically reference the "respective characteristics of the opposing restrictiveness levels," *E.A.R.* at 638, would be, at most, harmless error. Regardless, *E.A.R.* is clear on this matter and leaves no room for harmless-error analysis. As we are constrained by *E.A.R.,* we reverse the trial court's dispositions and remand for resentencing with instructions to either enter a disposition order that includes the requisite *E.A.R.* findings or, if such findings cannot be made, enter an order committing T.S. to a minimum-risk nonresidential facility as recommended by the Department. *See M.J.*, 212 So. 3d at 538.

REVERSED and REMANDED.

B.L. THOMAS, C.J., CONCURS. MAKAR, J. CONCURS WITH WRITTEN OPINION.

5

MAKAR, J., concurring.

I concur, albeit with misgivings, because the broad holding of E.A.R. v. State requires that we substitute our appellate judgment for that of trial judges who preside in juvenile delinquency dispositions by applying a strict judicially-created standard that substantially narrows the trial judge's discretion, even though the legislative structure of the dispositional process itself does not mandate this intense degree of intercession. 4 So. 3d 614, 635-39 (Fla. 2009); see also id. at 642 (Canady, J., dissenting). The statute merely says that a trial court "shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department." § 985.433(7)(b), Fla. Stat.

Ordinarily, appellate review of compliance with this type of statutory standard would entail whether competent substantial evidence supports a trial judge's findings and reasons and whether her decision to disregard the agency's dispositional recommendation is an abuse of discretion. But that was the dissent's view in E.A.R., 4 So. 3d at 640 (Canady, J., dissenting). Instead, under E.A.R., our review accords the trial court little deference, effectively upending the appellate paradigm. We are compelled to determine whether the trial court provided a sufficiently "logical and persuasive" explanation that flows from "a full reasoning and understanding on the record" as to why "'one [dispositional] level is better suited

6

to serving both the rehabilitative needs of the juvenile-in the least restrictive setting- and maintaining the ability of the State to protect the public from further acts of delinquency.'" M.J. v. State, 212 So. 3d 534, 537-38 (Fla. 1st DCA 2017) (quoting E.A.R., 4 So. 3d at 638). Appellate review under E.A.R. is deemed "rigorous," making it "a difficult matter" to disregard an agency recommendation such that doing so "is no easy task and will take time and consideration." M.H. v. State, 69 So. 3d 325, 328 (Fla. 1st DCA 2011).

Again, the statute itself doesn't compel this degree of appellate inquiry; E.A.R. does, which binds us in the task to be performed. Ensuring that dispositions are done in a thoughtful way that protects society while placing juveniles in appropriate levels of restrictiveness is commendable, but where the record supports a dispositional order—as in this case and others (such as M.H., 69 So. 3d at 328 and B.L.R. v. State, 74 So. 3d 173, 176 (Fla. 1st DCA 2011))—it makes little sense to reverse and remand for the trial court to amend the dispositional order by rotely inserting record evidence. The E.A.R. ship left the dock in 2009, but its wake shouldn't preclude upholding dispositional orders under a harmless error approach. B.L.R., 74 So. 2d at 178-79 (Wolf, J., dissenting) (suggesting that the failure to comply with E.A.R. may be harmless error in some circumstances).