# Third District Court of Appeal

## State of Florida

Opinion filed February 17, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1858
Lower Tribunal No. 19-1316
_____

**V.L.H., a juvenile,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Yery Marrero, Judge.

Carlos J. Martinez, Public Defender, and John Eddy Morrison, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Kseniya Smychkouskaya, Assistant Attorney General, for appellee.

Before SCALES, HENDON, and MILLER, JJ.

HENDON, J.

V.L.H., a juvenile, raises issues relating to the trial court's violation of probation order and the disposition order committing her to the custody of the Department of Juvenile Justice ("DJJ") for placement in a non-secure residential program, which orders were entered on December 1, 2020, following a violation of probation hearing. We affirm the violation of probation order but remand with instructions to strike any reference to V.L.H. failing to maintain contact with her juvenile probation office ("JPO"), and reverse the disposition order and remand for a new disposition hearing as set forth in this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In July 2019, the State filed a delinquency petition against V.L.H. for battery on a law enforcement officer. On February 20, 2020, the DJJ prepared a predisposition report recommending probation. The report did not contain any alternative recommendations as to the level of commitment if the trial court should decide in the future to commit V.L.H. to the custody of the DJJ.

On May 19, 2020, the trial court found V.L.H. delinquent but withheld adjudication and placed her on probation. The probation order provided that V.L.H. has to, among other things, live with her parent, maintain an 8:00 p.m. curfew, attend school, not commit new law offenses, and

2

maintain contact with her JPO.

In October 2020, V.L.H's JPO, Victoria Nurse, filed an affidavit of violation of probation, which was amended in November 2020. The amended affidavit asserts that V.L.H. violated her probation by (1) committing the new law offense of battery on June 5, 2020; (2) violating her 8:00 p.m. curfew on several specific dates; (3) failing to attend class on several specific dates; and (4) committing the new law offenses of petit theft and resisting an officer without violence on November 10, 2020. The affidavit provided that if found guilty of the probation violations, the DJJ is considering commitment.

On November 11, 2020, V.L.H. was picked up pursuant to a pickup order and placed in secure detention. She was also charged with new law violations.

On December 1, 2020, the trial court conducted a violation of probation hearing. JPO Nurse testified that she instructed V.L.H. as to her conditions of probation, and as to V.L.H's new law violations, truancy, and curfew violations. JPO Nurse also testified that V.L.H. was required to contact her every Monday and have meetings once a month, but JPO Nurse did not specifically testify that V.L.H. violated this condition of probation.

3

V.L.H.'s father testified, among other things, as to an altercation between his wife (V.LH.'s mother) and V.L.H., during which he heard his wife state, "Why are you hitting me? Why are you hitting me?" His wife called the police, and V.L.H. was arrested. He also testified as to several occasions where V.L.H. would leave the house for prolonged periods, including from October 13th to October 26th, and that she was eventually located by the police on October 26th sleeping in an apartment. Thereafter, V.L.H. continued to run away from home.[1]

At the hearing, the trial court ruled that it was revoking V.L.H.'s probation because V.L.H. willfully and substantially violated her probation by not abiding by her curfew, not staying at home, not staying in contact with JPO Nurse, and committing the new law offense of battery on her mother. On that same day, the trial court entered a Violation of Probation Order and, over defense counsel's objection, a Disposition Order and Commitment to the Department of Juvenile Justice, ordering that V.L.H. be committed to the DJJ for placement in a non-secure residential program ("Disposition Order"). In the Violation of Probation Order, the trial court set the case for a review of placement on January 4, 2021. Defense counsel objected to continuing V.L.H.'s secure detention. The State argued that

---

[1] V.L.H. also testified at the hearing, but the trial court found that V.L.H. was not credible.

4

V.L.H. could be detained under section 985.439, Florida Statutes, but V.L.H.'s counsel argued that a new disposition order under that statute requires notice and a new predisposition report. The trial court ruled that based on V.L.H.'s history of running away and putting herself in danger, commitment is the only appropriate remedy. Defense counsel objected once again and noted that V.L.H. was not waiving the predisposition report. The trial court then noted that it had a prior predisposition report—the February 2020 report when V.L.H. was placed on probation—and was also relying and JPO Nurse's testimony. V.L.H.'s appeal followed.

After V.L.H. filed her notice of appeal, the trial court conducted a hearing on January 5, 2021.[2] During the hearing, the trial court reviewed the DJJ's "Post-Disposition Report" dated December 16, 2020. In the report, the DJJ did not make a recommendation as to either continuing probation or commitment and did not recommend a commitment restrictiveness level. Instead, the DJJ's post-disposition report merely acknowledges that on December 1, 2020, the trial court found that V.L.H. violated her probation, adjudicated her delinquent, and committed her to the DJJ for placement into a non-secure residential facility, with conditional release services to follow. Defense counsel renewed all objections raised

_____

[2] The hearing scheduled for January 4, 2021, was rescheduled to January 5, 2021.

5

at the December 1, 2020 hearing. The trial court found that the December 16, 2020 post-disposition report was consistent with the February 20, 2020 predisposition report she reviewed at the violation of probation hearing and with JPO Nurse's testimony. As the State and the trial court referred to the report as a predisposition report, JPO Nurse informed the trial court that the report was not a predisposition order, but actually a post-disposition report because the trial court entered a disposition from the bench on December 1, 2020.

**ANALYSIS:**

**I. Whether the trial court erred in finding that V.L.H. violated her probation by failing to maintain contact with her juvenile probation officer where this ground was not alleged in the probation violation affidavit?**

The State has conceded that the trial court fundamentally erred by finding that V.L.H. violated her probation by failing to maintain contact with JPO Nurse because this ground was not alleged in the amended violation of probation affidavit. However, based on our review of the transcript of violation of probation hearing, it is clear that the trial court would have found that V.L.H. violated her probation based on the other proven grounds. As such, we affirm the violation of probation order, but remand with instructions for the trial court to strike any reference to V.L.H. failing to maintain contact with her juvenile probation officer. See Grady v. State,

6

264 So. 3d 363, 366 (Fla. 2d DCA 2019) ("Moreover, this court need not reverse an order of revocation based on one unproven violation when the record establishes that the trial court would have revoked based on other proven violations.").

**II. Whether the trial court erred in entering the Disposition Order on December 1, 2020, without a new predisposition report?**

A. *Is the issue moot?*

In response to V.L.H.'s argument that the trial court erred by entering the Disposition Order without a new predisposition report, the State argues that the issue is now moot because, when the trial court entered the Disposition Order, it considered a previously prepared predisposition report prepared approximately ten months prior to the entry of the new disposition order and because the trial court considered the post-disposition report at the hearing conducted on February 5, 2021. We disagree.

An issue is considered moot "when the controversy has been so fully resolved that a judicial determination can have no actual effect." Carlin v. State, 939 So. 2d 245, 247 (Fla. 1st DCA 2006) (quoting Godwin v. State, 593 So. 2d 211, 212 (Fla. 1992)). Under the circumstances of this case, V.L.H.'s argument is not moot. Although a post-disposition report was prepared following the December 1, 2020 disposition, the post-disposition report did not specifically address whether V.L.H.'s probation should be

continued or whether she should be committed to the DJJ and if committed, a recommended restrictiveness level. Further, although the trial court reviewed the February 2020 predisposition report, that report recommended probation and did not identify an alternative recommendation as to the restrictiveness level if the trial court should decide to commit V.L.H. to the DJJ in the future.

**B. _Disposition Order_**

V.L.H. argues that the trial court erred by entering the Disposition Order prior to obtaining a new predisposition report from the DJJ. We agree.

Section 985.43(1)(a), Florida Statutes (2020), provides, in part, that "[a] predisposition report shall be ordered for any child for whom a residential commitment disposition is anticipated or recommended by an officer of the court or by the [DJJ]." Thus, if commitment is anticipated or recommended, a predisposition report is not optional. Further, the DJJ "shall recommend to the court the most appropriate placement and treatment plan, specifically identifying the restrictiveness level most appropriate for the child if commitment is recommended." § 985.433(7)(a), Fla. Stat. (2020). Before making a final disposition, the trial court "shall consider the child's entire assessment and predisposition report and shall

review the records of earlier judicial proceedings." § 985.43(2); see also § 985.433(7)(a). Further, the trial court "shall commit the child to the [DJJ] at the restrictiveness level identified or may order placement at a different restrictiveness level." § 985.433(7)(b). However, if the trial court disregards the restrictiveness level recommended by the DJJ, the trial court "shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the [DJJ]." § 985.433(7)(b).

The record before this Court reflects that the trial court circumvented this procedure. Although the trial court found that V.L.H. violated her probation and then adjudicated her delinquent, the trial court entered the Disposition Order without receiving a predisposition report that recommended commitment and identified a restrictiveness level. The predisposition report prepared in February 2020 recommended probation, not commitment and/or identify a restrictiveness level, and did not address future commitment and/or restrictiveness level. Further, the post-disposition report did not recommend commitment and/or a restrictiveness level, but merely reflected the trial court's ruling on December 1, 2020.

The State argues that a new predisposition order is not required when a trial court finds that a child has violated her probation, adjudicates

9

the child, and then commits the child to the DJJ, relying on section 985.439, Florida Statutes (2020), which is titled "Violation of probation or postcommitment probation." Section 985.439(4) provides that following a hearing, if the trial court finds that a child has violated the conditions of probation or postcommitment probation, the trial court "shall enter an order revoking, modifying, or continuing probation or postcommitment probation," and "[i]n each such case, the court shall enter a new disposition order and, in addition to the sanctions set forth in this section, may impose any sanction the court could have imposed at the original disposition hearing." The State argues that because the statute does not provide that a new predisposition report is required to enter a new predisposition order following a violation of probation, a new predisposition report is not required. The State further argues that V.L.H. was on notice that the DJJ was recommending commitment because the affidavit of violation of probation stated so.

The State has not cited to any case specifically supporting its position. However, F.L.P. v. State, 292 So. 3d 791 (Fla. 4th DCA 2020), supports V.L.H.'s position. After F.L.P. allegedly violated his probation, the DJJ "recommended he remain on probation and furnished a PDR [predisposition report] that contained a probation recommendation but no

10

alternative commitment recommendation." Id. at 793. Thus, it appears that following F.L.P.'s alleged violation of probation, a new disposition report was prepared by the DJJ. Thereafter, the State disagreed with the recommendation and sought commitment. The trial court ordered F.L.P. committed to a non-secure facility, and F.L.P. appealed.

On appeal, the Fourth District provided that "[s]ection 985.433, Florida Statutes (2018), delineates the procedural requirements a trial court's disposition decision must meet after a juvenile has been adjudicated delinquent." The court then quotes section 985.433(7)(b), which provides:

> The court shall commit the child to the [DJJ] at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the [DJJ].

F.L.P., 292 So. 3d at 793-94. The Fourth District discussed the analysis the trial court must conduct prior to departing from the DJJ's recommendation. Thus, this case suggests that prior to entering a disposition following a violation of probation, the DJJ is required to submit a predisposition report recommending a restrictiveness level if commitment is recommended. See also M.J. v. State, 212 So. 3d 534 (Fla. 1st DCA 2017) (noting that the case involved a situation where M.J. admitted to violating his probation for a second time, and the trial court ordered the DJJ

11

to prepare a predisposition report); <u>P.Y. v. State</u>, 976 So. 2d 1168 (Fla. 1st DCA 2008) (noting that the case involved a situation where trial court disregarded the DJJ's recommendation in a predisposition report to restore P.Y. to probation after he violated probation). Although section 985.439(4) only states that a "new disposition order" is required after a probation violation, but does not mention a new predisposition report, section 985.439(4) should not be read in isolation, but in *pari materia* with sections 985.43 and 985.433, which sets forth the procedures for the entry of a disposition order. For example, as stated above, section 985.44(1)(a) provides, in part, that a "predisposition report shall be ordered for any child for whom a residential commitment disposition is anticipated or recommended by an officer of the court or by the [DJJ]," and section 985.44(2) provides that the trial court is required to review the predisposition report before making a final disposition. Further, section 985.433 provides that the DJJ "shall recommend to the court the most appropriate placement and treatment plan, specifically identifying the restrictiveness level most appropriate for the child if commitment is recommended." § 985.433(7)(a), Fla. Stat. (2020).

In the instant case, V.L.H. was adjudicated delinquent after the trial court found that she violated her probation. Thus, prior to entering a

12

disposition, the DJJ was required to prepare a predisposition report recommending continued probation or commitment to the DJJ, and if recommending commitment, identifying a recommended restrictiveness level. The DJJ's February 2020 predisposition report recommended probation, not commitment, and did not contain any alternative recommendations as to commitment and/or restrictiveness level if the trial court should decide to commit V.L.H. in the future. Further, the DJJ's post-disposition report merely sets forth the trial court's disposition entered on December 1, 2020, following the probation violation hearing. Thus, V.L.H.'s argument has merit. Accordingly, we reverse the Disposition Order entered on December 1, 2020, and remand for a new disposition hearing before a different judge, during which hearing the trial court must consider a proper disposition report prepared by the DJJ, which hearing must be conducted on an expedited basis.

Affirmed, in part, and remanded with directions; reversed, in part.

13